# NEWHOUSE v. ALEXANDER.

No. 445.   Opinion Filed June 8, 1909.

Rehearing Denied August 4, 1910.

(110 Pac. 1121.)

1.   QUO WARRANTO—Scope of Jurisdiction—Constitutional Provisions.  The Constitutional Convention by providing in article 7, sec. 2, Const., that the Supreme Court, and in section 10 of the same article that the district courts, shall have power to issue writs of quo warranto, looked rather to the substance than to the form, and simply meant not so much to give those courts power to issue writs of a prescribed form, but to solemnly fix the ancient remedies secured by that writ, and leave it to the Legislature to prescribe any new process or procedure to invoke those remedies in the courts, and to amplify and extend the remedies theretofore obtainable in the form of the ancient writ.

2.   ELECTIONS—Preservation of Ballots—Statutory Provisions—Contest—Ballots as Evidence.  That part of Sess. Laws Okla. 1905, c. 17, art. 1, sec. 8, which provides that "said ballot package shall be preserved by the county clerks in some secure and safe place," is not mandatory.  Where the ballots are preserved so that their identity is assured, they can be counted during a contest; and they are undoubtedly better evidence of the vote cast than the returns, and should prevail where there is a difference.  But, before a recount of the ballots should be allowed to rebut the presumption of the correctness of the official returns, it should be proved satisfactorily that the ballots have not been tampered with since the election, and that those offered in evidence are the identical ones cast.

3.   SAME—Sealing of Ballots.  That part of Sess. Laws Okla. 1905, c. 17, art. 1, sec. 8, which provides that "all of the ballots counted and one certificate. one poll book and one tally sheet shall be securely sealed in a stout paper or muslin envelope or bag," is not mandatory, and when the ballots at the close of the count were placed in a large paper envelope, and the envelope was not sealed with the names of the election judges written across the seal, but was folded over at the end and sewed through with a needle and twine string, and the envelope containing the ballots was placed in the box and locked, and the ballots produced in court were the identical ballots voted by the voters of the precinct in question, and in the identical condition that they were when placed in the envelope by the election officers of the precinct, held, that the court did not err in admitting the same in evidence to rebut the presumption of the correctness of the official returns.

4.    **ELECTIONS—Exclusion of Mutilated Ballots—Statutory Provisions.** That part of Sess. Laws Okla. 1905, c. 17, sec. 8, which provides, "If in the canvass of the votes, any ballot is found not endorsed with the initials of the poll clerks as provided, and any ballots which bear any distinguishing mark, or on which any writing appears with pen or pencil, and any ballot upon which the judges are unable to agree as to how it shall be counted, the same shall not be counted but shall be designated as mutilated ballots and shall be preserved and kept separate from the ballots counted. * * *" is mandatory, and all ballots which do not comply therewith were properly excluded by the court as evidence to rebut the presumption of the correctness of the official returns.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County; George L. Mann, Special Judge.*

Action by Marvin M. Alexander against J. L. Newhouse. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. W. Witten, B. T. Buchanan,* and *J. L. Maynard,* for plaintiff in error.—On exclusion of ballots lacking poll clerk's initials: *Moyer v. Van de Vanter,* 12 Wash. 377; *Harning v. Burgess,* 119 Mich. 51; *Bennington v. Hare,* 60 Minn. 146; *Buckner v. Lynip* (Nev.) 41 Pac. 762; *Town of Eufaula v. Gibson,* 22 Okla. 507; McCrary on Elections (4th Ed.) p. 521.

*F. F. Lamb, Belford & Hiatt,* and *Mark L. Bozarth,* for defendant in error.—On same question: *Boyd v. Mills,* 53 Kan. 594; 10 A. & E. Enc. L. 726; *Parvin v. Wimburg,* 130 Ind. 561; *State v. Russell* (Neb.) 51 N. W. 466; McCrary on Elections (4th Ed.) secs. 225, 226; *Kirkpatrick v. Canvassers* (W. Va.) 44 S. E. 465; *Mauck v. Brown,* 59 Neb. 382; *Orr. v. Bailey, Id.* 128; *Lorin v. Seitz,* 8 N. D. 404; *Kelso v. Wright,* 110 Iowa, 560; *McKay v. Minner,* 154 Mo. 608; *Slaymaker v. Phillips,* 5 Wyo. 453; *Rhodes v. Driver,* 69 Ark. 501; *People ex rel. v. Canvassers,* 129 N. Y. 395; *Keller v. Touline* (Miss.) 7 So. 508; *State v. Connor,* 86 Tex. 133.

TURNER, J.    At the election held in the proposed county of Okmulgee, in the proposed state of Oklahoma, on September 17, 1907, for the election of state and county officers, J. L. Newhouse,

plaintiff in error, defendant below, and Marvin M. Alexander, defendant in error, plaintiff below, were rival candidates for judge of the county court of that county. On the face of the returns as certified by the board of canvassers Alexander received 1,367 votes and Newhouse received 1,384 votes for said office, whereupon Newhouse was declared elected, and certificate of election issued to him. He thereupon qualified and took possession of said office and was proceeding to hold the same when Alexander commenced this action against him in the district court of that county, which said action is in the nature of a *quo warranto* to try the title of that office. After answer and reply, the cause was submitted by agreement to the Honorable George L. Mann, special judge, for trial, who thereupon proceeded to take testimony from which he made findings of fact and conclusion of law and rendered judgment in favor of Alexander, declaring him legally elected judge of the county court of that county and entitled to immediate possession of said office and ousted Newhouse therefrom, from which said judgment after motion for a new trial filed and overruled said Newhouse appeals. It is first contended by Newhouse that the court was without jurisdiction to try this cause for the reason that the writ of *quo warranto* and proceedings by information in the nature of *quo warranto*, abolished by Wilson's Rev. & Ann. St. Okla. 1903, § 4848, revives, by sections 2 and 10 of article 7 of the Constitution, the ancient writ of *quo warranto,* which makes it the sole remedy of Alexander in this cause. If such is the effect of said provisions when construed together, then Alexander is without remedy, for the reason that the functions of the ancient writ were limited to matters *publici juris,* and the same was not available for the trial of purely private rights. 23 Am. & Eng. Enc. of Law, 598. There is no conflict in said provisions, and nothing in this contention. We take it that the Constitutional Convention, by providing in article 7, § 2, Const., that the Supreme Court, and in section 10 of the same article that the district courts, shall have power to issue writs of *quo warranto,* looked rather to the substance than to the form, and simply meant not

so much to give those courts power to issue a writ of 'a prescribed form, but to solemnly fix the ancient remedies secured by that writ, and leave it to the Legislature to prescribe any new process or procedure to invoke those remedies in the courts, and to amplify and extend the remedies theretofore obtainable in the form of the ancient writ. This was done by Wilson's Rev. & Ann. St. Okla. 1903, art. 29, under the head of "Procedure Civil," which, in effect, provides that the remedies theretofore obtainable in that form might be had by civil action, and extends the remedy so as to permit a private person to contest with another private person the right or title to a public office. On this subject in *State ex rel. Attorney-General v. Messmore*, 14 Wis. 115, the court said:

"It was insisted that section 3 of article 7 of the Constitution only gave this court power to issue the writ of *quo warranto* at the common law; that the statutes of 1849 abolished the common-law writ and substituted the proceedings by information; that the present statute abrogated both the writ and the information, and declared a civil action to be the only remedy, and, as it was a mere civil action, it could not be entertained. We consider that the framers of the Constitution looked rather to the substance than the form; that their object was not so much to give us power to issue a writ of a prescribed form, as to enable us to hear and determine controversies of a certain character; and that this jurisdiction could not be taken away by any legislative changes in the forms of the remedy, but that we might adopt any new process which was calculated to attain the same end."

We are therefore of the opinion that the lower court had jurisdiction to try this cause. On the trial Alexander, in support of the allegations in his petition, assumed the burden of proof to rebut the presumption of the correctness of the official returns, *inter alia,* of precinct No. 1, Seevers township, and to show that the ballots from that township were the identical ones before the court, and that the statutory provisions concerning their custody had been complied with, or, if not, that they had not been tampered with, and that they should be received in evidence for that purpose. At the close of the testimony on both sides the court

opened the ballot box containing·said ballots and made with reference to them the following findings of fact:

"(4) That at precinct No. 1, Seevers township, there were counted, certified, and returned by the election board of said precinct 133 votes as having been cast for the office of judge of the county court of said county, of which 20 ballots were counted, certified, and returned for plaintiff, and 113 ballots for the defendant.

"(5) The court finds from the evidence that during the count in precinct No. 1, Seevers township·the ballots were strung upon a string as they were counted, and at the close of the count were placed in a large paper envelope. The envelope· was not sealed with the names of the judges written across the seal, but was folded over at the end, and sewed through with a needle and twine string. The envelope containing the ballots was placed in the ballot box and locked, and the ballot box taken in charge by the inspector at that precinct and by him delivered to J. C. Trent, the county clerk of the proposed county of Okmulgee. The ballot box containing the ballots was kept by Trent ·for a time in a room the door of which was fastened with an ordinary lock easily unlocked with what is commonly known as a skeleton key, and then removed and kept for a time in another room the door of which fastened with a similar lock. These doors were kept locked, but any person with a skeleton key could easily have entered the same, and at least two persons not authorized to have the custody of the ballots did actually enter the rooms where these ballots were. Prior to statehood Trent removed the ballot box containing the ballots from this precinct to the vault of the First National Bank of Okmulgee, where it remained until brought into court. Some time after statehood Trent turned the ballot box over to Fred H. Smith, the deputy county clerk of Okmulgee county, by going, with him to the First National Bank, and stating to the officers of that institution that the ballot box was turned over to Smith. The keys of the ballot box were not turned over to Smith, but remained in the possession of Trent until brought into court. When the ballots from this precinct were produced in court, they were in the envelope inside of this ballot box. The ballot box was made of wooden boards, apparently an inch thick, securely nailed together. The top fitted into the box by means of grooves in the board forming the sides of the box, and could not be· removed except by unlocking the box. The box was locked with

two locks of different design, and not easily unlocked except with the key. When the box was opened, the ballots were found to be in the envelope, the box being in perfect condition as described above, showing no evidence of having been disturbed. The ballots were on a string, and in apparently perfect condition. The court finds from all the evidence that the ballots as produced in court were the identical ballots voted by the voters at this precinct and in the identical condition that they were in when placed in the envelope by the election officers of that precinct.

"(6) The court finds from an inspection and count of the ballots cast at precinct No. 1 of Seevers township that of the 20 votes cast at that precinct for plaintiff, Marvin M. Alexander, 8 ballots had on the back thereof the full name of one polling clerk only, and were numbered to correspond with the voter's number on the polling book, four ballots had on the back thereof the initials of one polling clerk only and were numbered in like manner, three ballots had on the back thereof the initials of one polling clerk and were not numbered, two ballots were initialed 'L. G. H.,' the initials of both clerks being written by L. G. Hamilton, one of the clerks, one ballot had on the back thereof in the lower lefthand corner the initials of both polling clerks, one ballot had on the back thereof in the upper right-hand corner the name of one clerk in full and the initials of the other clerk, and one ballot was printed on colored paper. The court further finds that of the ballots cast at said precinct for defendant, J. L. Newhouse, 43 had on the back thereof the full name of one polling clerk only and a number to correspond with the number of the voter on the poll book, 33 ballots had on the back thereof the initials of one polling clerk only and a number to correspond with the number of the voter on the poll book, 15 ballots had on the back thereof the initials of one polling clerk only, 1 ballot had on the back thereof the full name of one polling clerk only, 4 ballots had on the back thereof the initials. 'L. G. H.' and 'E. H.,' both sets of initials being written by L. G. Hamilton, one of the clerks, one ballot having on the back thereof the initials of one polling clerk in the lower left-hand corner and the initials of one clerk in the upper left-hand corner, and 15 ballots had on the back thereof in the lower left-hand corner the initials of both polling clerks. * * * The court finds that none of the irregularities above found were accompanied by fraud, and that the result of the election was not in anywise changed by reason thereof."

The court also found the following:

"Conclusions of Law.

"(1) Upon the finding of fact numbered 5, the court declares the law to be that the ballots from precinct No. 1, Seevers township, should be admitted in evidence, and, when so admitted, are controlling as to the result of the election in said precinct.

"(2) Upon the finding of fact numbered 6, the court declares the law to be that ballots having on the back thereof the name or initial of but one of the polling clerks, and ballots numbered on the back to correspond with the number of the voter on the poll book, and ballots printed on colored paper, and ballots having on the back thereof the initials of both clerks both sets of initials being written by one clerk, are mutilated ballots, and should be excluded from the count. The number of ballots so excluded were counted, certified, and returned by the election board of said precinct is 18 ballots cast for plaintiff and 96 ballots cast for defendant.

"As a result of the above findings of fact and conclusions of law, the court finds that the plaintiff received 1,349 legal votes at said election for the office of judge of the county court, said defendant 1,288 legal votes for said office, electing plaintiff by a majority of 61, and judgment will be entered accordingly establishing the plaintiff's right to the office and ousting the defendant therefrom. GEORGE L. MANN, Judge."

It is contended by Newhouse that the court erred in admitting in evidence over his objection the ballots of precinct No. 1, Seevers township, because, he says, in effect, that said findings of fact show that the statutory provisions requiring the county clerk to preserve said ballot package in some secure and safe place had not been complied with, and that said facts so found were insufficient to rebut the presumption that said ballots had been tampered with. That this was not the identical ballot box returned from precinct No. 1, Seevers township, or that the box or its contents was in fact tampered with, or bore evidence that it had been, he does not contend. Neither does he contend that the findings of fact are unsupported by the evidence. Under said findings, we see no good reason why the ballots therein should have been excluded. If it be conceded that said statute was not

complied with, that would not afford sufficient reason for excluding them; as said statute is not mandatory. The ballots themselves were better evidence of how the electors voted at that particular precinct than the returns, and should be counted in a contest if free from fraud. The burden was upon Alexander to prove this, and we cannot say that the court erred in finding that he had fairly sustained it. 10 Am. & Eng. Enc. of Law, 829, states the rule thus:

"Where ballots are preserved, so that their identity is assured, and they can be counted during a contest, they are undoubtedly better evidence of the vote cast than the returns, and should prevail where there is a difference. * * * Before the recount of the ballots should be allowed to rebut the presumption of the correctness of the official returns, it should be proved satisfactorily that the ballots have not been tampered with since the election, and that those offered in evidence are the identical ones cast. * * * Where the statute provides that the ballots shall be kept in a certain way, and they are in the hands of the proper officer, it is presumed that he has done his duty, and the burden of proof is upon those assailing them to show that they might have been tampered with. On the other hand, when it is made to appear that the statutory provisions have not been complied with, this fact alone does not render the ballots inadmissible, but merely throws upon the person who asks the recount the burden of proof to show that they have not been tampered with. But this is a question of fact, to be determined by the jury or the court trying the issues."

In *Edwards v. Logan,* 114 Ky. 312, 70 S. W. 852, 75 S. W. 257, the court said:

"The rule may be stated to be that, where the ballots are preserved so that their identitly is assured, they can be counted during a contest and they undoubtedly are better evidence of the vote cast than the returns, and should prevail where there is a difference. *Hughes v. Holman,* 23 Or. 481, 32 Pac. 298; *Owens v. State,* 64 Tex. 500; *People v. Holden,* 28 Cal. 123. But, before a recount of the ballots should be allowed to rebut the presumption of the correctness of the official returns, it should be proved satisfactorily that the ballots had not been tampered with since the election, and that those offered in evidence are the identical ones cast."

In *People v. Livingston*, 79 N. Y. 288, it was said:

"The statute required the ballot boxes to be preserved undisturbed and inviolate, and it is incumbent upon the party offering the evidence to show that they had been so kept—not beyond a mere possibility of interference, but that they were intact to the satisfaction of the jury. The burden was upon the relator to satisfy the jury that the boxes had remained inviolate. The returns are the primary evidence of the result of an election. They are made immediately upon canvassing the votes, and the votes are canvassed at the close of the polls in public, and presumably in the presence of the friends of both parties.   *   *   *   After the election, it is known just how many votes are required to change the result. The ballots themselves cannot be identified. They have no earmarks. Everything depends upon keeping the ballot boxes secure, and the difficulty of doing this for several months in the face of temptation and opportunity requires that the utmost scrutiny and care should be exercised in receiving the evidence. Every consideration of public. policy, as well as the ordinary rules of evidence, require that the party offering this evidence should establish the fact that. the ballots are genuine. It is not sufficient that the mere probability of security is proved, but the fact must be shown with a reasonable degree of certainty. If the boxes have been rigorously preserved, the ballots are the best and highest evidence, but, if not, they are not only the weakest, but the most dangerous, evidence."

It is next contended by Newhouse that these ballots should not have been admitted in evidence to rebut the presumption of the correctness of the official returns, because he says that they were not sealed with the names of the election board written across the package as required by that part of Sess. Laws 1905, c. 17, art. 1 § 8, which reads, "On completing the canvass and recording same on the tally sheets and executing the certificates, all of the ballots counted and one certificate, one poll book and one tally sheet shall be securely sealed in a stout paper or muslin envelope or bag, with the names of the election board written across the seal of the package," and which he says is mandatory. The findings of fact disclose that these ballots "were strung upon a string as they were counted, and at the close of the count were placed in a large paper envelope. The envelope was

not sealed with the names of the election judges written across
the seal, but was folded over at the end and sewed through with
needle and twine string. The envelope containing the ballots
was placed in the ballot box and locked, - *   *   *   that the bal-
lots produced in court were the identical ballots voted by the
voters at this precinct, and in the identical condition that they
were when placed in the envelope by the election officers at that
precinct." The uncontradicted evidence in addition discloses that
a needle and twine string were furnished with the election sup-
plies, but no sealing wax, that said envelope was not sealed for
that reason, and that the judges signed their names at the places
designated on said envelope. We do not think the statute manda-
tory, and are of the opinion that the omission of the seal was
at most a mere irregularity in no manner affecting the actual
merits of the election. The test as to whether an election statute
is mandatory or merely directory is stated thus by Mr. McCrary
in his work on Elections (4th Ed.) § 225:

"If the statute expressly declares any particular act to be
essential to the validity of the election, or that its omission shall
render the election void, all courts whose duty it is to enforce
such statute must so hold, whether the particular act in question
goes to the merits, or affects the result of the election, or not.
Such a statute is imperative, and all considerations touching its
policy or impolicy must be addressed to the Legislature. But if,
as in most cases, that statute simply provides that certain acts or
things shall be done within a particular time or in a particular
manner, and does not declare that their performance is essential
to the validity of the election, then they will be regarded as
mandatory if they do, and directory if they do not, affect the
actual merits of the election. "*   *   * "

Section 227:

"The rule of construction to be gathered from all authorities
was thus stated in *Jones v. The State* and approved in *Gilleland
v. Schuyler:* 'Unless a fair consideration of the statutes shows
that the Legislature intended compliance with the provisions in
relation to the manner to be essential to the validity of the pro-
ceedings, it is to be regarded as directory merely.' "

A mere irregularity in forwarding the returns such as is here

complained of will not warrant their rejection when free from fraud. 15 Cyc. 377:

"The manner of forwarding or transmitting returns is purely a matter of statutory regulation; but these statutes are directory merely unless a noncompliance with them is expressly declared to be fatal, and in the absence of fraud or any suspicion of fraud, a mere irregularity in forwarding the returns will not warrant their rejection. Thus, where it is the duty of the election officers to return the votes sealed, it has been held that a return of them unsealed, in the absence of any proof or suspicion of fraud, is good"—citing *Mallary v. Merrill,* Cl. & H. Cas. Cont. El. 328; *Platt v. Goode,* Smith Cas. Cont. El. 650; *Patton v. Coates,* 41 Ark. 111.

10 Am. & Eng. Enc. of Law, 742:

"There would seem to be no doubt that the principle that only things which are of the essence of the matter are mandatory, and that other provisions are to be considered as directory only, applies to forwarding the returns. And the authorities seem to bear out this doctrine, though there are some cases which seem to be at least partially opposed to it."

*Mallary v. Merrill, supra,* was a contested election case for a seat in the Sixteenth Congress. On January 5, 1820, the committee on elections to consider the contest reported that in their opinion Merrill was not entitled to the seat, and that Mallary was entitled to it. Under the laws of Vermont from whence the contest came, the returns of the towns were transmitted to a canvassing committee chosen by the General Assembly and in accordance with the findings of that committee, and in accordance with the law, the Governor of the state executed credentials to Mr. Merrill, but the committee on elections, going behind the Governor's certificate and the result ascertained by the canvassing committee, found "that the canvassing committee had rejected the legally given votes of the town of Fairhaven because the election officers of that town had transmitted the certificate of votes to the canvassing committee in an unsealed packet, while the law required the packet to be sealed. The committee, holding that the House of Representatives had not been accustomed to allow votes

legally given to be defeated by the mistake or negligence of a returning officer, were of the opinion that the votes of Fairhaven should be allowed to the contestant," and by a vote of 116 to 47 Mallary was declared entitled to the seat. The syllabus of that case in part says:

"No fraud being alleged, the house counted returns transmitted in an unsealed package, although the state law required the package to be sealed."

In *People v. Board of Canvassers*, 105 App. Div. 197, 94 N. Y. Supp. 996, the question considered was one closely akin to the one here. In that case the court said:

"It is alleged, also, by the relators that original statements of canvass from 12 election districts, showing in the aggregate 1,-404 votes in the affirmative and 1,106 in the negative, were filed with the clerk and delivered to the defendant board and wrongfully canvassed, for the reason that they were not securely and separately sealed with sealing wax, as required by section 112 of the election law [Laws 1896, c. 909.] These allegations were denied by the answering affidavits, which show that, while such statements were not in every case 'separately sealed' yet in every case they were 'securely sealed' with sealing wax when filed with the county clerk; one having been sealed inclosed with the tally sheet, one with detached stubs and unvoted ballots, one with the poll book and tally sheet, and others with other official papers used at the election. The answering affidavits show that the failure to comply strictly with the requirements of the statute in this respect was in each case unintentional. At the most, the failures were mere irregularities, resulting either from not fully comprehending the statutory requirements or from oversight on the part of the inspectors. In the absence of any claim that these irregularities resulted from any tampering with the returns, or from any fraud in connection with them, or that these returns as canvassed did not correctly show the votes cast on the question in the districts from which they came, the electors in such districts should not be disfranchised because of them. *People v. Cook*, 8 N. Y. 67, 59 Am. Dec. 451."

*Patton v. Coates*, 41 Ark. 111, was a contested election over the office of judge of Pulaski county. The law made it the duty of the election judges before dispersing to put one of the poll

books under cover and seal the same and direct it to the county clerk, to be delivered to him by one of the judges. It then became the duty of said clerk to call to his assistance two justices of the peace and canvass the vote. There was a failure to seal one of the poll books before sending it to the clerk. The court said:

"It is plain enough from the evidence that the poll books from all the townships and wards in the county were those actually used and made up by the officers holding the election, that they are substantially authenticated in accordance with the statute, and that they contain no internal indication of fraud."

And in the fourth division of the syllabus say:

"The failure or omission of the judges to seal the poll book before sending it to the clerk will not invalidate it where it has no appearance of having been tampered with."

And so we say in this case that as there was no evidence whatever that the envelope in question or the ballots therein contained had been tampered with, and the same is not contended, we are of the opinion that the court did not err in admitting the same in evidence. In so holding we are not unmindful of the authorities cited by counsel for Newhouse, to wit, *Banks v. Sergent,* 104 Ky. 849, 48 S. W. 149; *Anderson v. Likens,* 104 Ky. 699, 47 S. W. 867; *Neeley v. Rice,* 123 Ky. 806, 97 S. W. 739, and *Edwards v. Logan,* 114 Ky. 312, 70 S. W. 852, which seem to be followed in no other state. In those cases the statute in substance required that, if there were any ballots counted or left uncounted concerning the legality or regularity of which there was any doubt or difference of opinion in the minds of the judges, said ballots "shall be placed in the large linen envelopes furnished by the county court clerk for that purpose and sealed up, and across the seal thereof the officers of the election shall plainly write their names, and at the point of the seal indicated for that purpose the judges of the election shall, in the presence of the judge and sheriff, place the election seal in hot wax, and the same shall be returned to the clerk of the county court with the returns of the election, for such judicial or other investigation as may be necessary, with a true statement of whether they have or have not

been counted, and, if counted, what part and for whom." In construing said statute, all of said cases held the same with reference to the certificate of the election officers in regard to contested ballots to be mandatory, in the absence of which said certificate said ballots were without probative force, but none of said cases go so far as to hold that the mere omission of the seal would have that effect in the absence of fraud, and, if they did, we would not feel disposed to follow them in the construction of the statute in question. That such was the effect of the holding in those cases is evident. In *Neeley v. Rice, supra,* the court said:

"It is agreed that the officer of the election at Cow creek precinct did not comply with the provisions of the statute in making their returns as to the 85 contested ballots. They were placed in a large linen envelope, sealed and marked 'Contested ballots,' but without any certificate of the officers of the election attached thereto, and without any of the names of the officers of the election being written across the seal of the envelope. It will be observed that the statute requires a certificate to be attached to, or placed with, the questioned ballots, with a true statement as to whether they have or have not been counted, and, if counted, what part and for whom. The statute further requires that the officers of the election shall plainly write their names across the seal on the envelope, and that the judges of the election shall, in the presence of the clerk and the sheriff, place thereon the county election seal in hot wax. All of this the election officers failed to do. Notwithstanding this statute, the court counted these ballots, evidently upon the theory that the statute had been changed since the opinions of this court were rendered in *Struss v. Johnson,* 100 Ky. 319, 38 S. W. 680; *Anderson v. Likens,* 104 Ky. 699, 47 S. W. 867, and *Banks v. Sergent,* 104 Ky. 843, 48 S. W. 149. In all of these cases this court held the provisions of the statute as it then existed with reference to the *certificate* of the election officers in regard to contested ballots were mandatory."

It is contended that the court erred in excluding from the count of the ballots so returned from precinct No. 1, Seevers township, the eighteen ballots cast for Alexander and the ninety-six ballots cast for Newhouse not bearing the initials of the poll clerks and otherwise mutilated, thereby reducing the legal votes cast for the former to 1,349, and the legal votes cast for the lat-

ter to 1,288. We do not think so. Wilson's Rev. & Ann. St. 1903, § 2937:

"At the opening of the polls, after the organization of and in the presence of the election board, the inspector shall open the package of ballots in such a manner as to preserve the seals intact. He shall then deliver to the poll clerk of the opposite political party from his own, twenty-five each of the territorial and local ballots, and to the other poll clerk the stamps for marking the ballots. The poll clerks shall at once proceed to write their initials in ink on the lower left hand corner of the back of said ballots, in their ordinary handwriting, and without any distinguishing marks of any kind. As each successive elector calls for a ballot the poll clerk shall deliver him the first signed of the twenty-five ballots of each kind, and the inspector shall immediately deliver to the poll clerks another of each kind which the poll clerks shall at once countersign as before and add to the ballots already countersigned, so it shall be delivered for voting after all of those heretofore countersigned."

Section 2950:

"No inspector of election, or judge acting for an inspector, shall deposit any ballot upon which the initials of the poll clerk, as hereinbefore provided, do not appear, or any ballot on which appears externally any distinguishing mark, defacement or mutilation."

Sess. Laws Okla. 1905, c. 17, art. 1, § 8:

"If, in the canvass of the votes, any ballot is found not endorsed with the initials of the poll clerks as provided, and any ballot which bears any distinguishing mark, or on which any writing appears with pen or pencil, and any ballot upon which the judges are unable to agree as to how it shall be counted, the same shall not be counted, but shall be designated as mutilated ballots and shall be preserved and kept separate from the ballots counted. * * *"

The statute is mandatory. No authority is cited to the contrary. "The clerks shall at once proceed to write their initials in ink on the lower left hand corner of the back of said ballots, in their ordinary handwriting. * * * No inspector of election, or judge acting for an inspector, shall deposit any ballots upon which the initials of the poll clerks * * * do not appear, or

any ballot on which appears externally any distinguishing mark, defacement or mutilation," and "the same shall not be counted." Under the subhead of "Irregularity in Ballots," 10 Am. & Eng. Enc. of Law (2d Ed.) 726, lays down the general rule that:

"These statutes, being designed to preserve the secrecy of the ballot, and to prevent fraud, intimidation and bribery, will generally be considered mandatory; and this will be so in all cases where the statute provides that a ballot varying from the requirements of the law shall not be counted."

In *Kirkpatrick v. Board of Can., etc.*, 53 W. Va. 275, 44 S. E. 465, the court, speaking of similar statutes, says:

"No case had been found, nor is it believed that any exist, in which the court has held that disobedience to such a requirement does not invalidate the ballot, when the statute is held constitutional."

And, after an exhaustive review of the authorities, says:

"Further authority to the same effect is found in McCrary on Elections (4th Ed.). At section 225 he admits that mere irregularity on the part of the election officers, or their omission to observe some merely directory provisions of the law, will not vitiate the poll, but in section 226 he says, after referring to a case (*West v. Ross* in 53 Mo., at page 350) in which the statute requiring the ballots to be numbered according to the numbers on the poll books was held to be mandatory: 'Although this doctrine may sometimes result in a very great hardship and injustice, by depriving the voters of their rights by reason of the negligence or misconduct of the officers of the election, it is nevertheless difficult to see how any different construction could have been placed upon such a statute. Statutes which simply direct the judges of election to number the ballots, without declaring what consequences shall follow if this be not done, may well be held directory only; but, where the statute both gives the directions and declares what the consequences of neglecting their observance shall be, there is no room for construction. Such statutes are intended to prevent fraudulent voting, and, if the Legislature is of the opinion that the general good to be derived from their strict enforcement will more than counterbalance the evils resulting from the occasional throwing out of votes honestly cast, the courts cannot reconsider the mere question of policy. The legislative will upon such a subject, when clearly expressed, must prevail.' *Major v. Barker*,

[99 Ky. 305] 35 S. W. 543; *Slaymaker v. Phillips,* [5 Wyo. 453] 42 Pac. 1049, 47 L. R. A. 482; *State v. Connor,* 86 Tex. 133, 23 S. W. 1103; *Russell v. McDowell,* 83 Cal. 70, 23 Pac. 183; *Sego v. Stoddard,* 136 Ind. 297, 36 N. E. 204, 22 L. R. A. 468; *Kreitz v. Behrensmeyer,* 125 Ill. 141, 17 N. E. 232 [8 Am. St. Rep. 349]."

In *Mauck v. Brown,* 59 Neb. 382, 81 N. W. 313, the court says:

"The ballots cast at the election were obtained and counted by the county court, and it was decided that the appellee had received 1,277 votes and the appellant 1,273, or that for the former there was a majority of 4. In the district court the ballots were examined, and as the result of another count it was settled that for the appellee there were 1,277 legal votes, and the appellant 1,272, a difference of 5 in favor of the former, who was adjudged entitled to the office.   *   *   *   There were discovered during the count of the ballots nine with the name of but one judge of election on the back of each. Seven of these were favorable to the election of appellant, and two to that of appellee. They were not counted, and that they were not is of the complaints of appellant. In the decision of the case of *Orr v. Bailey* (opinion filed October 18, 1899) [59 Neb. 128] 80 N. W. 495, similar questions were presented and examined, and it was determined that the provisions of the ballot law that the signature of two judges of the election should be written on the back of the ballot before given to the voter, and, if not, the ballot should not be deposited in the ballot box, and, if it was, should not be counted, were mandatory, and ballots not so identified, or on the back of which there appeared the signature of but one judge of the election, should not be counted. A re-examination of the question at this time does not change our views of the matter; hence this objection must be overruled."

In *Orr v. Bailey,* 59 Neb. 128, 80 N. W. 495, the precinct in question cast forty-one votes as shown by the abstract and by the count of which Bailey received 31 and Orr 10. The court said:

"*   *   *   That each of the 41 ballots cast in said precinct at said election was indorsed on the back with the name of Christ Erchenberg written in ink, and that said name was all and the only indorsement on said ballots.   *   *   *   One of the important objects of the Australian ballot law was, and is, to provide purity

and honesty in elections and to prevent frauds; and the prescriptions that the signatures of two of the judges of election shall be placed on the back of each ballot, before it is delivered to a voter, and it shall by the voter be folded so as to disclose these signatures, when he presents it for deposit in the ballot box, and it may not be deposited unless they do so appear or are in fact on the back of the ballot, and if deposited without such indorsement the ballot shall be void and not counted, are but parts of the general scheme, and it will be noticed that the voter is called upon to aid. He must take notice of the signatures of the two judges on the back of his ballot, and so notice them as to materially assist in the process of casting the ballot and its identification prior to deposit by the proper official. The elector is charged with a knowledge of the law, and he can hardly escape the discovery that the signatures are or are not on the back of the ballots when he folds it, and that it is or is not a ballot which can be used. To this extent he must be asked to give his attention, and that he be so asked is certainly not destructive to the freedom of the election, nor do we deem it an impediment or a hindrance of the exercise of the elective franchise, nor a new qualification of an elector. The provisions in question are clearly but regulative in their essential features, and assist in the honest, intelligent exercise of the right to vote, and are not violative of the Constitution."

In *Kelso v. Wright,* 110 Iowa, 560, 81 N. W. 805, a statute was under construction quite similar to the one in question. The court in its syllabus said:

"Under Acts 24th Gen. Assem. c. 33, §§ 21, 25, providing that one of the judges of election shall indorse his initials on the ballot given to the voter, and no ballot without such indorsement shall be deposited in the ballot box, and only ballots provided in accordance with the provisions of the act shall be counted, a ballot on which the initials of one of the judges are not indorsed should not be counted."

In support of this doctrine, see, also, *Lorin v. Seitz,* 8 N. D. 404, 79 N. W. 869; *McKay v. Minner,* 154 Mo. 608, 55 S. W. 866; *Slaymaker v. Phillips,* 5 Wyo. 453, 40 Pac. 971, 42 Pac. 1049, 47 L. R. A. 842; *Rhodes v. Driver,* 69 Ark. 501, 64 S. W. 272; *Arnold v. Anderson,* 41 Tex. Civ. App. 508, 93 S. W. 692; *Clark v. Hardison,* 40 Tex. Civ. App. 611, 90 S. W. 342; *People*

*ex rel. Nichols v. Board of Can.*, 129 N. Y. 395, 29 N. E. 327, 14 L. R. A. 624.

We are therefore of the opinion that the court did not err in excluding the ballots in controversy, and, finding no error in the record, the judgment of the lower court is affirmed.

All the Justices concur.