**STATE of Oklahoma, ex rel. OKLAHOMA TAX COMMISSION, James E. Walker, John L. Garrett, J. L. Merrill, Petitioners,**

v.

**Zan W. MOURER, Respondent.**

**No. 53328.**

Supreme Court of Oklahoma.

June 19, 1979.

---

884

Marjorie Patmon, Gen. Counsel, Mary Kathleen Rhodes, Oklahoma Tax Commission, Oklahoma City, for petitioners.

Cathy Lee Stocker, Asst. Dist. Atty., Garfield County, Enid, for respondent.

SIMMS, Justice:

A dispute exists between the Appointee of the Oklahoma Tax Commission and Respondent County Commissioner Appointee as to who is entitled to hold public office as a member of the Garfield County Board of Equalization, County Commissioners' District No. 3.

Petitioners and Respondent join in asking this Court to assume original jurisdiction and settle title to the office, or alternatively, prescribe a method of making a valid appointment. The parties seek to invoke the original jurisdiction of this Court under authority of the "general superintending control" provisions of Art. VII, Sec. 4, Okl. Const. However, Sec. 4. empowers this Court to "issue, hear, and determine writs of quo warranto." 12 O.S.1971, § 1532, provides actions in the nature of quo warranto "may be brought in the Supreme

Court * * *." The common law writ of quo warranto was abolished in 1903 by Wilson's Rev. and Ann.St.Okl. § 4848, but provided remedies obtainable in the nature of quo warranto could be had by civil action.

In *Newhouse v. Alexander, 27 Okl. 46, 110 P. 1121 (1909)*, it was held that the Code and Constitutional provisions were not in conflict, and that the Code provisions were intended to amplify and extend the remedies obtainable in the form of the ancient writ of quo warranto. *Newhouse* mandated that we look to substance rather than form in actions in the nature of quo warranto.

▮ Title to public office is the gravamen of this controversy. Both sides argue, and we agree, the issues are *publici juris. Arterbery v. Hargrove, 197 Okl. 514, 172 P.2d 990 (1946)*, tells us that where the question of right or title to office is put in issue, the appropriate remedy is an action in the nature of quo warranto. Situations in which the writ may be involved are set forth in 12 O.S.1971, § 1532. The case at bar is clearly of a type contemplated by the statute. In *State v. Rowe, 149 Okl. 240, 300 P. 727 (1930)*, this Court held the Supreme Court properly exercised original jurisdiction in an action in the nature of quo warranto which was *publici juris* in nature.

There is, however, a statutory limitation on this Court's power to hear such matters. Under 12 O.S.1971, § 1531, the right of a public official to occupy his office may be challenged "before the expiration of thirty days after such official is inducted into office." We have held in the past that this statute is not merely a limitation on the action, but is instead a limitation on the right itself. *Pinson v. Robertson, 197 Okl. 419, 172 P.2d 625 (1946)*. See also: *Duggan v. Bailey, Okl., 317 P.2d 200 (1957)*. We are bound, therefore, to resolve a jurisdictional question before we proceed, and the essential facts are as follows.

▮ On December 7, 1978, the Tax Commission formally appointed Claude J.

Jones, Jr., to the Board, "effective" December 13, 1978. Notice of the Jones appointment was sent to the County Clerk of Garfield County together with the statutory loyalty oath[1], executed by Jones under date of December 11, 1978.

The two described instruments were filed by the Garfield County Clerk on December 20 1978, in compliance with 51 O.S.1971, § 13, which requires appointments be made in writing and filed with the Secretary of State or with the proper county officer. No vacancy existed on the Garfield County Board of Equalization on December 13, 1978.

Following the November, 1978, General Election, the County Commissioners commenced a new term of office on the first Monday in January, 1979. On January 2, 1979, respondent was reappointed to the Board of Equalization by the County Commissioners. The respondent lives in the same Commissioners' District as Jones. On the day of his appointment, respondent caused to be filed his appointment and loyalty oath with the clerk.

Thus, two men were appointed from the same county commissioners' district in contravention of the provisions of 68 O.S.Supp. 1977, § 2457, which provides in pertinent part: "* * * One member (of the county board of equalization) shall be appointed by the Oklahoma Tax Commission . . . and one member shall be appointed by the board of county commissioners, and their tenure of office shall be coterminous with that of the county commissioners . . . *Not more than one member shall live in any one county commissioners' district.*" (E.A.) The residency restriction was appended to the statute in 1977.

It was not until oral presentation of the matter to a member of this Court, that both parties recognized the potential consequences of failure to file the oath of office as provided by Art. XV, § 1, Okl.Const.,

---

1. 51 O.S.1971, § 36.1 requires every officer and employee of the State, or of a county, school district, municipality, public agency, public authority, or public district thereof, who is ap-

pointed to or elected to office, in order to qualify and enter upon the duties of his office to first take and subscribe to the loyalty oath or affirmation as set forth in 51 O.S.1971, § 36.2A.

which requires "all public officers before entering upon the duties of their office to take and subscribe" to an oath separate and apart from the statutory loyalty oath. On the same day as oral presentation, Jones caused his constitutional oath and an additional loyalty oath to be filed with the County Clerk of Garfield County at 3:56 p. m., and respondent filed his constitutional oath with the Clerk at 4:52 p. m. Having set out the operative facts, we now address the issue of jurisdiction.

Under Oklahoma's statutory scheme, there are three different bodies legally authorized to make appointment to the contested position. The Tax Commission's appointee filed his notice of appointment and statutory loyalty oath on December 20, 1978. The Commissioner's appointee to the same position signed his statutory loyalty oath on January 2, 1979. The Tax Commission commenced its action in this Court on February 14, 1979. The respondent joined in the request for this Court to assume jurisdiction on March 2, 1979. Both appointees filed their Constitutional oath on March 6, 1979. Tax Commission then filed an amended application to assume original jurisdiction on March 21, 1979. The question then is whether this action was instituted before the expiration of thirty days from the time either appointee was "inducted" into office.

In *Pinson v. Robertson, supra,* we held that a claimant to elective office to whom a certificate of election is duly issued and who qualifies by filing the prescribed bond, approved by the proper authority, and the prescribed oath of office, is thereby "inducted" into office within the meaning of 12 O.S.1971, § 1531. The same standard applies to claimants of appointive offices. The appointee will be "inducted" upon the fulfilling of all conditions precedent to his qualification and entry upon the duties of his office. Under this definition, neither party could be "inducted" into the contested position before March 6, 1979, since the taking and subscribing of the constitutional oath is a condition precedent to entry upon the duties of the office. The Tax Commission's amended application was filed within the statutory period, and, since it incorporated the allegations of the original application by reference, the issues in both applications are rightly before the Court. We therefore assume jurisdiction.

■ As above pointed out, neither Jones nor respondent had complied with Art. XV, § 1, Okl.Const. The words "public officer" as used in the amended Art. XV clearly embraces Board of Equalization members because 51 O.S.1971, § 2, requires "[e]very State, county, township, city, town, school district, or other *public officer* under the laws of this state" to take and subscribe to the constitutional oath before entering upon the duties of his office. This conclusion is reinforced by the definition of "public officer" found in *City of Tulsa v. District Court of Tulsa County, 174 Okl. 470, 51 P.2d 511 (1935).* It was therein determined that where an office is created by statute, city charter, or ordinance, and appointment is made to fill such office in compliance with the terms and provisions of the law creating it, the person so appointed is a "public officer". This definition includes members of the Board of Equalization.

It is true that 51 O.S.1971, § 2, has not been amended to conform to the amended Art. XV oath. However, 51 O.S.1971, § 36.2A prescribes the form of loyalty oath to be given and describes the loyalty oath as being "cumulative" to the oath required by Sec. 2 of Title 51. We agree with petitioner that the oaths are not interchangeable but *both* must be properly subscribed and filed with the designated authority before an appointee to public office can become a *de jure* officer.

Petitioner maintains it was their intention to make a prospective appointment to the Board and that prospective appointments are valid. Respondent counters that the appointment of Jones is void in that general law controlling prospective appointments would lead to results which are contrary to legislative intent. Respondent further urges that to permit prospective appointments to the Board of Equalization would result in establishment of priority of

the right of appointment when no such priority was expressed in § 2457, supra.

In this regard, § 2457 is silent as to both time and order of appointment by the separate appointing authorities. The only restriction is that "not more than one member shall live in any one county commissioners' district."

The Tax Commission asks this Court to establish the method of making valid appointments to the various Boards of Equalization in order to avoid like disputes in the future. This would entail either the establishment of priority of appointment or judicially requiring the appointments be made simultaneously by the appointing authorities after making certain no two appointees live in the same commissioners' district.

[redacted] We decline to establish the manner and method of appointing in this case, for to do so would "smack" of judicial legislation. Another branch of government, the legislature, is vested with authority to establish public policy and address political disputes. The Legislature should assume its responsibilities and establish either priority or method of appointment between the co-equal appointing authorities. This Court is charged with settling the question presented by this case by existing law, not the law as we might envision it to later become or wish it to be.

Our task, therefore, is to determine whether the Tax Commission may make a valid prospective appointment and if so, whether the particular appointment is effective.

[redacted] The general rule was articulated by Montana's Supreme Court in *State v. Lexcen, 131 Mont. 161, 308 P.2d 974 (1957)*:

> "The general rule is, that a prospective appointment to fill a vacancy sure to occur in a public office, made by an officer who, or by body which, as then constituted, is empowered to fill the vacancy when it arises, is, in the absence of a law forbidding it, a valid appointment and vests title to the office in the appointee."

Respondent insists that application of the general rule would result in injustice. Because the terms of the Boards of County Commissioners and the Boards of Equalization are co-terminous, it will be impossible for County Commissioners to make prospective appointments. By the same token, the Tax Commissioners serve for six year staggered terms so as to permit replacement of one Tax Commissioner each two years. 68 O.S.1971, § 102. The Tax Commission would therefore be able to exercise a priority of appointment possibly two years in advance.

We agree that this result appears unjust.

Nevertheless, the Tax Commission has routinely made prospective appointments and the Legislature knew of this practice, when they amended § 2457 to foreclose any two members of the Board from residing in the same county commissioners' district (as evidenced by exhibits attached to the briefs filed herein).

We must conclude under the circumstances that the Legislature by its 1977 amendment created a priority of appointment to be exercised at the option of the Tax Commission. The respondent has not cited nor have we discovered any authority demonstrating that the general rule concerning prospective appointments should not be applied to the facts of this case.

Respondent urges, however, that even if the Tax Commission had authority to make a prospective appointment, improper exercise of that authority vitiated their attempt to fill the office in question. Jones' appointment was made "effective December 13, 1978", notwithstanding the fact that his term would not commence until January 1, 1979, the following year. Respondent assumes that the validity of an appointment is conditioned on the accuracy of the written evidence of the appointment.

Oklahoma Statutes, 51 O.S.1971, § 13, require that appointments be made in writing. In *Miller v. Board of County Comr's of Beaver County, 171 Okl. 553, 43 P.2d 734 (1935),* this Court concluded that the object of this statute was to remove disputes concerning *oral* appointments. Oklahoma's position is consistent with the general rule

that the written commission is only evidence of an appointment or an election and that the term of office set forth in the writing will, if the appointment is valid in other respects, be made to conform to the terms of office set forth in the Constitution or statutes. *State v. Lewis, 181 S.C. 10, 186 S.E. 625 (1936).*

Since the term for which Jones was appointed was to commence on January 1, 1979, he would be entitled to office as of the beginning of that day regardless of the date set forth on the written evidence of the appointment since his appointment was valid in all other respects. We conclude that on January 1, Jones became a *de facto* member of the Board of Equalization and that respondent therefore could not assume a *de facto* position with the Board of Equalization because no vacancy existed. Neither appointee became qualified to hold the office in all respects so as to be a *de jure* officer until March 6, 1979. Again, the Tax Commission appointee became the first *de jure* officer, which left no vacancy to be filled by the County Commissioners from District No. 3.

We therefore hold Jones was entitled to possession of the office as of the first Monday in January, 1979, and that he became qualified in all respects to enter upon the duties of the office as of March 6, 1979 at the hour of 3:56 p. m.

Petitioner's request of this Court a ruling on whether or not Jones is entitled to back pay for Board of Equalization meetings he has attended, but not participated therein. Because this issue presents evidentiary questions, we decline to rule on this issue at this time.

TITLE TO OFFICE SETTLED IN PETITIONER'S APPOINTEE.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, DOOLIN and HARGRAVE, JJ., concur.

OPALA, J., disqualified.