890 P.2d 954 (1995)
Brian McKYE, Petitioner,
v.
The STATE ELECTION BOARD OF the STATE OF OKLAHOMA; The Honorable Lance Ward, in his capacity as Secretary of the State Election Board; The Honorable Carolyn Ricks, Judge of the District Court of Oklahoma County, State of Oklahoma; The Honorable Glen D. Johnson, in his capacity as Speaker of the Oklahoma House of Representatives, and Debbie Blackburn, Respondents.
No. 84718.
Supreme Court of Oklahoma.
February 28, 1995.
Joe Heaton, Fuller, Tubb & Pomeroy, Oklahoma City, for petitioner.
Neal Leader, Sr. Asst. Atty. Gen., Oklahoma City, for respondents Johnson, Ward and the State Election Bd.
Lee Slater, York & Slater, Oklahoma City, for respondent Blackburn.
*956 SUMMERS, Justice.
When the votes were counted after last November's general election Brian McKye was 29 votes short in his race for State Representative, District 88. Neither a recount nor a District Court hearing on alleged irregularities changed the result. He now asks that we assume original jurisdiction and grant relief by way of mandamus or quo warranto. We assume original jurisdiction, but deny relief for reasons to be explained.
Debbie Blackburn was the successful candidate. McKye (1) sought a recount and (2) filed a petition alleging irregularities. The recount increased the margin of Blackburn's win by one vote. The irregularities alleged were that certain voters had moved from the district and had not changed their registration. The District Judge denied the petition for irregularities, and directed the State Election Board to issue a certificate of election to Blackburn.
The District Judge's decision was at approximately 10:30 A.M. on November 22, 1994. The certificate of election was issued at approximately 12:00 noon that day, and Blackburn took the oath of office shortly thereafter. More than two weeks later, on December 7, 1994, McKye filed an application in this Court for mandamus and quo warranto to require Blackburn to vacate the office, and for the District Judge to hold an evidentiary hearing on the residency of certain voters.
Petitions alleging irregularities and requesting a recount must be filed by the Friday next following an election. 26 O.S. 1991 § 8-109. That Friday fell on November 11, 1994. November 11th is Veterans' Day and an official State Holiday. 25 O.S. 1991 § 82.1. Section 82.1 states that "Any act authorized, required, or permitted to be performed on a holiday as designated in this section may be performed on the next succeeding business day, and no liability or loss of rights of any kind shall result from such delay." The petition alleging irregularities and requesting a recount was filed Monday, November 14, 1994, so it was timely. 25 O.S. 1991 § 82.1; Hendrix v. State ex rel. Okla. State Election Bd., 554 P.2d 770, 772 (Okla. 1976).
The action in this Court was styled as an application for mandamus and quo warranto. This action is not an appeal from the lower tribunal, but an independent, original action. We are empowered by Okla. Const. Art. 7 § 4 to review by an independent action the correctness of a ruling by an election board that may affect the outcome of an election. Boevers v. Election Bd. of Canadian County, 640 P.2d 1333, 1335 (Okla. 1981); Box v. State Election Bd., 526 P.2d 936, 939 (Okla. 1974); Sparks v. State Election Board, 392 P.2d 711, 712 (1964), (Syllabus by the Court). We assume original jurisdiction. However, the relief sought is Constitutionally forbidden, and we do not reach the question of voter residency.

I. Mandamus
Insofar as Petitioner seeks a writ of mandamus against the Election Board which has certified the election of Blackburn, that relief would be improper. Mandamus has been used to gain possession of office by one who has title to the office by a certificate of election, but title to the office may not be tried in a mandamus proceeding. Elliott v. State ex rel. Kirkpatrick, 150 Okla. 275, 1 P.2d 370, 371 (1931), Rasure v. Sparks, 75 Okla. 181, 183 P. 495, 497 (1919). A mandamus proceeding does not look behind a certificate of election unless that certificate is void. Jewitt v. West, 33 Okla. 703, 127 P. 476, 478 (1912); Ellis v. Armstrong, 28 Okla. 311, 114 P. 327, 328 (1911); State ex rel. Love v. Smith, 43 Okla. 231, 142 P. 408, 410 (1914). This mandamus proceeding cannot go behind the certificate of election and try title to office based upon alleged irregularities.
Petitioner also seeks mandamus to require the trial court to take further action. We have stated that the right to contest an election by extraordinary relief may be lost by laches or inexcusable delay. Evans v. State Election Board, 804 P.2d 1125 (Okla. 1990). For example, in Evans we cited Harding v. State Election Board, 197 Okla. 291, 170 P.2d 208 (1946) for the proposition that a delay of ten days in bringing an action for extraordinary relief against the Election Board was not diligent and barred by laches. *957 Evans, 804 P.2d at 1127-1128. A writ of mandamus to require the lower tribunal to take additional action, as requested here, would result in reopening a petition for irregularities after the issuance of a certificate of election, a result inconsistent with the statutory ideal of completing such a proceeding before a certificate of election is issued. 26 O.S. 1991 § 8-120; Moore v. Hayes, 744 P.2d 934, 942 (Okla. 1987). On the other hand, petitioner correctly points out that this Court has the power to order an election board to cancel or void a certificate of election, and has done so in the past. Hembree v. City of Stillwell, 597 P.2d 1218, 1221 (Okla. 1979); Stover v. Alfalfa County Election Board, 530 P.2d 1020, 1023 (Okla. 1975). We need not, however, labor with the timeliness of his post-certification mandamus action here except as it implicates the ultimate impediment to our hearing his election challenge: Art. 5 § 30 of the Oklahoma Constitution. It is upon this provision that we must deny Petitioner any relief, as we are about to explain.

II. Quo Warranto
This action is also styled as an application for quo warranto. A proceeding in the nature of quo warranto may be brought by a contestant for an office after the issuance of the certificate of election and before the expiration of thirty days after such official is inducted into office. 12 O.S. 1991 § 1531. The certificate of election issued November 22, 1994 and this action was filed December 7, 1994. The quo warranto aspect of the action is timely filed pursuant to the letter of the quo warranto statute. But that does not solve the question of whether it was timely under Okla. Const. Art. 5 § 30.
Whether Blackburn has become a member of the House of Representatives makes the difference as to whether this Court or the Legislature should hear Petitioner's claim. The impediment to our hearing Petitioner's challenge, referred to earlier, is one unique to the elections of State Representatives and Senators, and is set in our Constitution. The Oklahoma Constitution, Article 5 § 30, states in part:

Each House shall be the judge of the elections, returns, and qualifications of its own members, and a majority of each shall constitute a quorum to do business; but a smaller number may adjourn from day to day, and may be authorized to compel the attendance of absent members, in such manner and under such penalty as each House may provide. (emphasis added)
If Blackburn is a "member" of the House of Representatives we must yield jurisdiction to the House. In construing the provision that each House is the judge of the elections of its members we have stated that the provision has no force until after an election. Williamson v. State Election Bd., 431 P.2d 352, 355 (Okla. 1967); State ex rel. Cloud v. State Election Bd., 169 Okla. 363, 36 P.2d 20, 22 (1934).
When is "after an election" for the purpose of Art. 5 § 30? A timely filed election challenge is part of the election-return process. Simpson v. Dixon, 853 P.2d 176, 185 (Okla. 1993). A timely recount is an integral part of an election. Wickersham v. State Election Bd., 357 P.2d 421, 425 (Okla. 1960). The issuance of a certificate of election is also part of the election process. Williamson, 431 P.2d at 355. These are examples of when this Court has reviewed proceedings occurring before an election is completed. We have also said that induction into office completes the election process. Pinson v. Robertson, 197 Okla. 419, 172 P.2d 625 (1946).
An elected official who possesses a valid certificate of election, takes and files the required oath, and fulfills any bonding requirement, is inducted into office when that official's term begins. In Pinson v. Robertson, supra, we explained that an individual possessing a certificate of election who filed his oath of office and bond on January 2, 1945 was inducted into office within the meaning of 12 O.S. 1941 § 1531 when his term for County Judge began on January 8, 1945. Id. 172 P.2d at 626.[1] When did the legislative term begin in our case today?
*958 The term of office for certain executive officials is set by the Constitution, and begins in January next following the general election.[2]Legislative terms begin in November following the general election. Terms in the House and Senate start fifteen days after the general election in November with terms expiring fifteen days after the date of the general election. Gragg v. Dudley, 143 Okla. 281, 289 P. 254, 256 (1930); Coyle v. Smith, 28 Okla. 121, 113 P. 944, 946-947, aff'd., 221 U.S. 559, 31 S.Ct. 688, 55 L.Ed. 853 (1911); Daxon v. State Election Board, 582 P.2d 1315, 1317 (Okla. 1978). The Oklahoma Constitution was created with provisions that legislative terms began and concluded on the fifteenth day after the general election. R.L. Williams. The Constitution of Oklahoma and Enabling Act, Art. 5 §§ 9, 10 (2d ed. 1941). These sections were repealed and replaced by ones not specifically mentioning the fifteenth day after the general election. Okla. Const. Art. 5 §§ 9A, 10A. However, these sections, as a matter of law, perpetuated the same date for expiration and beginning of legislative terms by keeping in force the same 2-year and 4-year terms in §§ 9A and 10A. In other words, when the constitutional change occurred in May 1964[3] the same date for beginning the terms was kept so as to not enlarge the terms of those individuals then in office beyond 2-year and 4-year terms. The Legislature currently begins and ends its terms in November following the general election. Fair v. State Election Bd. of Okla., 879 P.2d 1223, 1224 (Okla. 1994).
This date of fifteen days after the general election is found in the constitutional provision regulating increases in legislative compensation as commencing on that date. Okla. Const. Art. 5 § 21. Legislators are paid based upon taking office in November. See 11 Okla.A.G.Opn. 37 (1979). The public pay records of this State indicate that Blackburn was paid for legislative service on November 30, 1994, pro-rated for the month of November, and received full pay for the month of December 1994.[4] The records also indicate that her predecessor in office received pro-rated legislative pay for the month of November 1994 and none for December 1994. A person holding an office receives pay during tenure in office and a person not in office does not. Hall v. Tirey, 501 P.2d 496, 502 (Okla. 1972). The practice of compensating legislators beginning fifteen days after the general election is consistent with their terms of office beginning on that date.
On the first day of the Forty-fifth Legislature the Legislature recognized a Communication from the Secretary of the State Election Board with an attached list of those issued certificates of election. The Legislature recognized the dates the various newly elected members took their oaths of office, and then stated that "the persons named in said Communication are declared duly reflected and qualified Members of the House of Representatives for the Forty-fifth Oklahoma Legislature from the date they took their Oaths of Office, said Oaths having been filed in the Office of the Secretary of State." Petitioner argues that this recognition was subject to, the present action. The argument makes no difference to this controversy. Blackburn's term began fifteen days after the general election, and she became entitled to the pay of her office on that date subject to the requirements of possessing a valid certificate of election and taking the required oath.

*959 Conclusion
We conclude that Blackburn was inducted into office at midnight on November 23, 1994, and that this original action was brought after Blackburn was inducted into office and had begun her term as a legislator. Under the Constitution only the House of Representatives may be the judge of her election at this time. Okla. Const. Art. 5 § 30. The applications for mandamus and quo warranto are denied.
ALMA WILSON, C.J., and LAVENDER, HARGRAVE and WATT, JJ., concur.
KAUGER, V.C.J., and HODGES and SIMMS, JJ., concur in result.
OPALA, Judge, Concurring in part, Dissenting in part.
"I concur in denying writ relief; I recede from the court's pronouncement."
NOTES
[1] The reasoning of this case was more recently applied to appointed officials in State ex rel. Oklahoma Tax Commission v. Mourer, 596 P.2d 882 (Okla. 1979). The date of the beginning of the term was not at issue, but rather we explained that the possession of the certificate of election and qualification for the office by filing the required oath and fulfilling any bonding requirements inducts the person into the office. Id. 596 P.2d at 886.
[2] Okla. Const. Art. 6 § 4 states that the term of office for the Governor, Lieutenant Governor, State Auditor and Inspector, Attorney General, State Treasurer, Commissioner of Labor, and Superintendent of Public Instruction shall be four years commencing from the second Monday in January next after their election. The term of the Secretary of State runs concurrently with the Governor. Okla. Const. Art. 6 § 1(B).
[3] See 1963 Okla. Sess. Laws, S.J.Res. No. 4, 736, (adopted at election held May 26, 1964).
[4] The payroll records indicate that she was paid November 30, 1994 by warrant no. XXXXXXXXX and on December 30, 1994 by warrant no. XXXXXXXXX.