WILLIAM L. ORR, APPELLEE, V. CHARLES BAILEY, APPEL-
LANT.

FILED OCTOBER 18, 1899. No. 8,996.

1. **Appeal: ERRORS IN PROCEDURE: REVIEW.** Alleged errors in mat-
ters of procedure of occurrence at or before the trial and rulings
during trial in regard to the admission or exclusion of evidence
are not reviewable on appeal to this court. .

2. **Elections: CONTESTS: COUNTY COURT: JUDGMENTS.** The jurisdiction
of statutory contests of election of county officers is placed in
the county courts, and as term cases. The prescriptions of the
Code of Civil Procedure in regard to time within which a justice
of the peace must render judgment are not applicable, and judg-
ments may be announced in contests in the county courts at
any time during the term at which the trials occur.

3. ———: **BALLOTS: NAMES OF JUDGES: CONSTITUTIONAL LAW.** The
requirements of the Australian ballot law, that the names or
signatures of the two judges of an election shall be written on
the back of each ballot to be used, and that a ballot not so
indorsed shall be void, and not counted, are mandatory, and are
not inimical to constitutional provisions.

APPEAL from the district court of Hayes county.
Heard below before GRIMES, J.   *Affirmed.*

See .opinion for statement of the case.

*W. S. Morlan,* for appellant:

The omission of the judges of election to indorse their
names on the ballots was an oversight.   The court should
not disfranchise voters on account of the failure of the
election officers to perform their duty.   The statutory
requirement that names of two judges should be indorsed
on ballots ought not to be construed as a mandatory pro-
vision.   See *Swearingen v. Roberts,* 12 Nebr., 337;  *Buckner
v. Lynip,* 41 Pac. Rep. [Nev.], 765;  *Tracy v. Troy & B. R.
Co.,* 38 N. Y., 437;  *State v. Russell,* 34 Nebr., 124;  *Bragdon
v. Navarre,* 60 N. W. Rep. [Mich.], 277;  *Moyer v. Van De
Vanter,* 41· Pac. Rep. [Wash.], 61;  *Parvin v. Winberg,* 30
N. E. Rep. [Ind.], 790;  *Lindstrom v. Board of Canvassers,*
54 N. W. Rep. [Mich.], 280;  *State v. Gay,* 60 N. W. Rep. ·

[Minn.], 676; *People v. Wood*, 42 N. E. Rep. [N. Y.], 536; *Boyd v. Mills*, 37 Pac. Rep. [Kan.], 16.

*J. W. Cole, R. C. Orr* and *J. T. McClure, contra:*

A statutory enactment disfranchising legal voters on account of the failure of election officers to indorse their names on ballots would be a violation of section 22, article 1, of the constitution, providing: "All elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise." See *Moyer v. Van De Vanter*, 41 Pac. Rep. [Wash.], 60; *State v. Corner*, 22 Nebr., 265; *Attorney General v. City of Detroit*, 78 Mich., 545; *Peard v. State*, 34 Nebr., 375; *Dells v. Kennedy*, 49 Wis., 555; *Slaymaker v. Phillips*, 42 Pac. Rep. [Wyo.], 1049; *People v. Board of Canvassers*, 29 N. E. Rep. [N. Y.], 327; *State v. Russell*, 34 Nebr., 123.

The statutory provision requiring names of two judges to be endorsed on ballots is mandatory. See *State v. Van Camp*, 36 Nebr., 91; *State v. Norris*, 37 Nebr., 299; *Ledbetter v. Hall*, 62 Mo., 422; *West v. Ross*, 53 Mo., 350; *Lankford v. Gebhart*, 130 Mo., 622; *Doores v. Varnon*, 94 Ky., 507; *Tebbe v. Smith*, 108 Cal., 101; *Attorney General v. McQuade*, 94 Mich., 439; *Taylor v. Bleakeley*, 39 Pac. Rep. [Kan.], 1045; *Whittam v. Zahorik*, 59 N. W. Rep. [Ia.], 57; *Lay v. Parsons*, 104 Cal., 661; *Waterman v. Cunningham*, 89 Me., 295; *Sego v. Stoddard*, 136 Ind., 297; *State v. Connor*, 23 S. W. Rep. [Tex.], 1103.

*A. J. Rittenhouse*, also for appellee:

The law is not unconstitutional. See *Slaymaker v. Phillips*, 42 Pac. Rep. [Wyo.], 1049.

HARRISON, C. J.

At the general election held in November, 1895, the contestant was the republican candidate for sheriff of Hayes county, and the contestee the democratic candidate for said office, and the two were the only candidates

13

for the office. As a result of a canvass of the votes the former, it was determined, had received 300 votes and the latter 309. The contestee was declared elected, and the other party instituted this, a statutory contest. From a judgment in the county court favorable to the contestee the defeated party appealed to the district court, and it was there decided that the contestant had received 302 votes and his adversary but 276. The former was adjudged elected, and entitled to the office. The contestee has appealed to this court.

After issues had been joined in the district court the contestee made application to the judge thereof at chambers for leave to file an amended answer, and the following order was made: "I, the district judge aforesaid, considering myself disqualified from hearing and trying said case on its merits, and having heretofore made arrangements to have said case tried by the Hon. H. M. Grimes, district judge within and for the thirteenth judicial district of said state, do hereby refer the said application to the said Hon. H. M. Grimes, district judge aforesaid." The contestee subsequently made an application to the district court, Judge Grimes presiding, to be allowed to amend his answer, which was denied. Complaint is made of the order which we have quoted, also of the subsequent order of the court. These were of matters of procedure of occurrence at or before the trial, and are not reviewable on appeal. See *National Life Ins. Co. v. Martin*, 57 Nebr., 350; *Ainsworth v. Taylor*, 53 Nebr., 484; *Alling v. Nelson*, 55 Nebr., 161; *Troop v. Horbach*, 57 Nebr., 644; *Te Poel v. Shutt*, 57 Nebr., 592; *Estep v. Schlesinger*, 58 Nebr., 62. The foregoing is also applicable to the review of rulings on objections to evidence during the trial. See *Village of Syracuse v. Mapes*, 55 Nebr., 738; *Alling v. Nelson, supra*. The docket entry in the county court contained the following:

"January 13, 1896. The hour having arrived for which the case was set for trial, the parties appeared. The following witnesses were supœnaed, sworn, and testified on

behalf of plaintiff: * * * After hearing the evidence in the case, the cause was submitted without argument. Cause continued by the court to the 18th day of January, 1896, at 1 o'clock P. M.

"January 18, 1896, parties appeared. The court finds the issues in favor of Charles Bailey, the incumbent, and that he was lawfully elected to the office of sheriff of Hayes county, Nebraska. It is therefore considered by the court that the said election be in all things confirmed and the complaint be dismissed, and the said William L. Orr, the contestant, pay the costs of suit."

It is argued that this shows a submission of the cause on the 13th of January and an adjournment for such a length of time as caused the then trial court to lose jurisdiction, and that court had no further jurisdiction, and the appellate court acquired none by the appeal. The remedy of contest pursued in this method is a statutory one, and after prescribing that the proper district courts shall hear and determine "contests of the election of county judge" (Compiled Statutes, ch. 26, sec. 70), it is further directed: "The county courts shall hear and determine contest of all other county, township, and precinct officers * * * within the county." See Compiled Statutes, ch. 26, sec. 71. Our attention is called to section 2, chapter 20, Compiled Statutes, wherein it is stated: "The provisions of the Code of Civil Procedure, relative to justices of the peace, shall, where no specified provision is made by this subdivision, apply to the proceedings in all civil actions prosecuted before said county court." Also to section 1002 of the Code of Civil Procedure, in which appears the following: "Upon a verdict, the justice must immediately render judgment accordingly. When the trial is by the justice, judgment must be entered immediately after the close of the trial, if the defendant has been arrested or his property attached; in other cases it must be entered either at the close of the trial, or if the justice then desire further time to consider, on or by the fourth day thereafter, both days inclusive."

There are also cited decisions of this court which it is claimed are to the effect that a judgment of a justice of the peace not rendered within the time prescribed in section 1002 of the Code is a nullity. See *Fox v. Meacham*, 6 Nebr., 530; *Worley v. Shong*, 35 Nebr., 311; *Thompson v. Church*, 13 Nebr., 287. See, also, *Best v. Stewart*, 48 Nebr., 859. The exact question here was not in either of the cases cited, but we will not stop now to consider whether the continuance by the court, if it occurred, brought it within the rule; without deciding it, for the sake of the argument, it may be conceded that it did. In the law in relation to contesting elections it is stated: "The proceedings shall be assimilated to those in an action, so far as practicable, but shall be under the control and direction of the court." See Compiled Statutes, ch. 26, sec. 86. The court shall have power to adjourn from day to day. See same section. It will be borne in mind that the "county courts" are to hear and determine contests of elections of county officers, except county judges. We have hereinbefore cited the sections etc. "Upon the filing of such complaint [one of contest], summons shall issue against the person whose office is contested, in the same manner as in civil actions, and a copy of the complaint shall in all cases accompany the summons. The cause shall stand for trial at the expiration of thirty days from the time of service of the summons and complaint, if the court shall then be in session, otherwise on the first day of the next term thereafter." See Compiled Statutes, ch. 26, secs. 83, 84. It is clear that contests of elections are in the county courts, and not within the jurisdiction of the county judges in the exercise of the ordinary powers and jurisdiction of justices of the peace.

In section 7, chapter 20, Compiled Statutes, the chapter in reference to "Courts—Probate (County)," it is provided: "It shall be the duty of the probate judge, in each county, to hold a regular term of the probate court at his office, at the county seat, commencing at nine o'clock A. M., on the first Monday of each calendar month, for

the trial of such civil actions brought before such court as are not cognizable before a justice of the peace. Such regular term shall be deemed to be open without any formal adjournment thereof until the third Monday of the same month, when all causes not then finally determined shall be continued by such court to the next regular term; but such courts shall be deemed to be always open for the filing of papers and issuance of process in civil actions, and for the purpose of taking and entering judgment by confession." It is sufficient if the proceedings show that the court was in regular session when the judgment was announced. See *Kelly v. Morse,* 3 Nebr., 224. The record here discloses on its face that the trial commenced on the 13th day of January, 1896, and judgment was rendered on the 18th of the same month. The third Monday of January, 1896, was the 20th of the month, and the judgment was announced within the term, and the court at the time had jurisdiction.

In the district court special findings were made, and in regard to the votes in Logan precinct it was stated and determined: "That in Logan precinct there were cast 41 votes, as shown by the abstract and by the court, and of which 41 votes the defendant Charles Bailey received 31 and the plaintiff William L. Orr received 10. The court further finds that H. V. Shattuch, John Johnson, and Christ Eichenberge were the judges, and E. W. Crossby and John Fane were the clerks at this election in said Logan precinct; that each of the 41 ballots cast in said precinct at said election was indorsed on the back with the name 'Christ Eichenberge,' written in ink, and that said name was all and the only indorsement on said ballots; that one of said ballots, 'Exhibit 5,' had the X to the left of the name instead of to the right of the name of Orr. The court further finds that all the ballots cast and counted in Logan precinct, 41 in number, are void and not entitled to be counted, for the reason that none of said ballots are indorsed with names of two of the judges of election as required by law. To which finding defend-

ant excepts." In section 145 of chapter 26, Compiled
Statutes, 1895, it is prescribed that when an elector shall
present himself at the polling place for the purpose of
voting at an election, then in progress, he shall receive
from a member of the election board "a ballot, upon the
back of which two members of the board shall first write
their names in ink." He shall then go alone into a com-
partment of a booth and prepare his ballot and fold it so
as to conceal the names and marks on the face and expose
the names of the members of the board upon the back
and, without or before leaving the railed enclosure in
which the compartments have, in conformity to require-
ments of law been placed, shall deliver the ballot in the
condition specified to the judges of election, "who shall,
without exposing the names or marks upon the front or
face thereof, verify the signatures upon the back thereof
and deposit the ballot in the ballot box in the presence
of the elector." Section 148 is as follows: "No judge of
election shall deposit in any ballot box any ballot, un-
less the same is identified by the signature of two (2) of
the judges of election as hereinbefore provided. Every
person violating the provisions of this section shall, upon
conviction thereof, be fined not less than ten ($10) dollars
nor more than one hundred ($100) dollars." Section 150
in part states: "In the canvass of the votes any ballot
which is not indorsed as provided in this act by the signa-
ture of two (2) judges upon the back thereof, shall be
void, and shall not be counted." It is contended that the
voter has a right to rely upon the officers of election to
properly perform their duties and indorse the ballots,
and if it is not done he is in no degree responsible, can not
be held so; and may not be disfranchised for that which
was no act of his, and which he could not direct or con-
trol, that the law must not or can not be construed as
mandatory. It is also argued that if the law in this par-
ticular portion in question is mandatory, then in so much
it contravenes the fundamentals of the state government
and is contrary to the ideas or principles which have been

given expression in our constitution. The constitutional provisions to which our attention is challenged are section 22 of article 1 and section 1 of article 7, which read as follows:

Sec. 22, art. 1: "All elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise.

Sec. 1, art. 7: "Every male person of the age of twenty-one years or upwards belonging to either of the following classes, who shall have resided in the state six months, and in the county, precinct, or ward for the term provided by law, shall be an elector: First, Citizens of the United States. Second, Persons of foreign birth who shall have declared their intention to become citizens conformably to the laws of the United States, on the subject of naturalization, at least thirty days prior to an election."

The arguments are that to carry out the intention of the legislature, in the enactment of the ballot law, as disclosed by the inspection of the whole act and blending all portions, some particular passages, and the one herein involved, may or must be construed to state that which by its terms it does not, or if it is mandatory, then it may as well have been omitted as violative of the constitution. "The Australian ballot law" or system has been adopted by almost all of the states of the United States. It has been at all times, and is, popular with those whom it affects—the voters. It has received and has general approval.

It has been stated: "The main features of these statutes consist in the provision for the use of an official ballot and in the provisions for secrecy as to votes, the object being, not only to allow a man to vote without any other person knowing for whom he votes, but to compel him to vote secretly, and thus prevent bribery, coercion, and other evils." See 10 Am. & Eng. Ency. Law [2d ed.], 585. "By thus tending to eradicate corruption and by giving effect to each man's innermost belief, it secures to the

republic what * * * is vitally necessary to its health—a free and honest expression of the convictions of every citizen." See 10 Am. & Eng. Ency. Law [2d ed.], 585, note 4; Wigmore, Australian Ballot System [2d ed.], Intro., p. 82. In regard to the rule to be observed in construing statutory provisions, it was said in *Swearingen v. Roberts*, 12 Nebr., 333: "It is an established rule, in the interpretation of a statute, that the intention of the lawgivers is to be deduced from the whole statute taken and compared together. 'The real intention, when accurately ascertained, will always prevail over the literal sense of terms. When the expression of a statute is special or particular, but the reason is general, the expression should be deemed general, * * * and the reason and intention of the lawgivers will govern the strict letter of the law, when the latter would lead to palpable injustice, contradiction, and absurdity.' " See, also, statement in *Tracy v. Troy & B. R. Co.*, 38 N. Y. App., 437. These are general, and it may be added that laws of the nature of the one under consideration in matters affecting the rights of the electors to exercise the voting power will be liberally construed.

In a consideration of provisions of the Australian ballot law, this court, in an opinion written by Post, J., stated: "In the construction of statutes of this character it is important to keep in mind two recognized principles: First—That the legislative will is the supreme law and the legislature may prescribe the forms to be observed in the conducting of elections and provide that such method shall be exclusive of all others. Second—Since the first consideration of the state is to give effect to the expressed will of the majority, it is directly interested in having each voter cast a ballot in accordance with the dictates of his individual judgment. Recognizing the principle first stated, the courts have uniformly held that when the statute expressly or by fair implication declares any act to be essential to a valid election, or that an act shall be performed in a given manner and no

Orr v. Bailey.

other, such provisions are mandatory and exclusive. By an application of the second principle, the courts, in order to give effect to the will of the majority and to prevent the disfranchising of legal voters, have quite as uniformly held those provisions to be formal and directory merely, which are not essential to a fair election, unless such provisions are declared to be essential by the statute itself. Judge McCrary, in the last edition of his excellent work on the Law of Elections [3d ed.], section 190, states the rule as follows: 'If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute must so hold, whether the particular act in question goes to the merits or affects the results of the election or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the legislature. But if, as in most cases, the statute simply provides that certain acts or things shall be done, within a particular time, or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election.'" See *State v. Russell*, 34 Nebr., 116; also, *Barnes v. Supervisors*, 51 Miss., 305; *Wheelock's Case*, 82 Pa. St., 297; *Ledbetter v. Hall*, 62 Mo., 422; *West v. Ross*, 53 Mo., 350; *Jones v. State*, 1 Kan., 273; *Lankford v. Gebhart*, 130 Mo., 621, 32 S. W. Rep., 1127, 51 Am. St. Rep., 585.

If the foregoing rules are given effect, then an examination of the ballot law as a whole, and in connection therewith the portion herein in question, with the purpose, in view in the light of the said doctrines, to ascertain the true intent or meaning, it must lead to a conclusion that it is mandatory. Its language is clear, free from ambiguity, and the meaning unmistakable. It declares that the requirement of the signatures of the judges is essential to the validity of the election and an

omission thereof fatal to the ballot, and there is nothing in the other portions of the act, or in its whole scope, to call for or demand or even warrant the construction of this part of it as merely directory. Any other construction would necessitate some judicial legislation, and this is not within our province. The main reason advanced against the enforcement of the law as enacted and as its language shows it, clearly mandatory, is the asserted hardship and injustice of depriving voters of their right by reason of the negligence or misconduct of election officers. "Such statutes are intended to prevent fraudulent voting, and if the legislature is of the opinion that the general good to be derived from their strict enforcement will more than counteract the evils resulting from the occasional throwing out of votes honestly cast, the courts can not reconsider the mere question of policy. The legislative will upon such a subject, when clearly expressed, must prevail." See *Slaymaker v. Phillips*, 42 Pac. Rep. [Wyo.], 1049; McCrary, Elections, secs. 190, 191.

In support of the contention that the voter may depend in the reception and use of his ballot upon the efficiency of the election officers, and that they will mark the ballot as required by law, and if not, he may not or can not be disfranchised by reason of an act, or rather a failure to act, not his own, and in regard to which he was entirely faultless, the counsel have cited a number of decisions which we have examined; also, the opinion in case of *Meyer v. Van De Vanter*, 41 Pac. Rep. [Wash.], 60, in which it was decided that a provision in regard to the indorsement of ballots very similar to the one now under consideration was in conflict with a section of the constitution. This decision last mentioned proceeds upon the ground that the law was mandatory; but the legislature could not pass an act by the effect of which the individual elector could be deprived of the right to vote by reason of no fault or neglect of his own, but that of those of other persons. In the opinion nothing appears to indi-

cate that a voter must do anything in regard to his ballot while in the preparation of it, or during the time he had possession of it, from which he could gain information of the indorsement or lack thereof, or that he was charged with any duty in respect to the indorsement; hence it can not be said to be strictly in point herein. The other cases cited all make the distinction between acts wholly of the duties of election or other officers who are charged with duties in regard to the election, or the conduct thereof, and acts within which there are included obligations upon the individual voter, and they all involved acts of the former nature and not of the latter; hence, as we view the requirements of the matters of litigation in the case at bar, the cases cited were not strictly in point. Turning more directly to the constitutional question, it is well established and universally known that courts are always reluctant to declare a law, or any portion thereof, unconstitutional, and the law will be upheld if it can and no violence be done to the fundamental law. Yet courts do not hesitate, when there is a clear violation of the constitution, to so declare. It can not be questioned that laws in regard to the conduct of elections which are merely regulative of the right to vote, or rather the manner in which the right shall be exercised, if they leave the election free and open to all electors, are not inimical to the constitutional provisions.

One of the important objects of the Australian ballot law was and is to provide purity and honesty in elections, to prevent frauds; and the presumptions that the signatures of two of the judges of election shall be placed on the back of each ballot before it is delivered to a voter and it shall by the voter be folded so as to disclose these signatures when he presents it for deposit in the ballot box, and it may not be so deposited unless they do appear or are in fact on the back of the ballot, and, if deposited without such indorsement, the ballot shall be void and not counted, are but parts of the general scheme, and it will be noticed that the voter is called upon to aid. He

must take notice of the signatures of the two judges on the back of his ballot, and so notice them as to materially assist in the process of casting the ballot and its identification prior to deposit by the proper official. The elector is charged with a knowledge of the law, and he can hardly escape the discovery that the signatures are or are not on the back of the ballot when he folds it and that it is or is not a ballot which can be used. To this extent he must be asked to give his attention, and that he be so asked is certainly not destructive of the freedom of the election, nor do we deem it an impediment or a hindrance of the exercise of the elective franchise, nor a new qualification of an elector. The provisions in question are clearly but regulative in their essential features, and assist in the honest, intelligent exercise of the right to vote, and are not violative of the constitution. See *Slaymaker v. Phillips*, 40 Pac. Rep. [Wyo.], 971, 42 Pac. Rep., 1049.

In regard to the conduct of the election in Frenchman precinct, the court determined as follows: "The court further finds that in Frenchman precinct said election was held in a sod schoolhouse; that no regular booth or booths of any kind had been furnished the precinct; that to take the place of a booth, or rather to serve as a booth, an overcoat was hung up to the rafter or one of the joists of the schoolhouse in or at one corner; that said overcoat was spread out and the bottom hung from six to fifteen inches above the top of the desk; that the school desk below and under said overcoat was for the purpose and used by the voters to mark their ballots upon; that there was no railing about the booth or about the place occupied by the election officers; that all of the voters did not go behind the booth to make out their ballots, but made them out sitting at school desks in the body of the room; that at least two of the tickets were filled out by one of the judges of election for two electors who claimed to be unable to read or write; that neither of such voters were required to make such declaration of such disability un-

der oath, nor did said officers certify on the outside of such ballot that they were marked by his or their assistance; that one Fierling was one of the judges of said election in said precinct, and was also a candidate for election to the office of assessor in said precinct." It is strenuously insisted for appellant that the court should have rejected the vote of this precinct. To this it may be said that, if the court erred in this particular, as the matter must stand here, it did not prejudice the complainant; as to reject the whole vote of the precinct would not change the result of the election as determined by the court. The ballots which were examined by the trial court are not with the bill of exceptions, and as this deprives us of portions of the evidence, we can not examine to ascertain whether the findings are sustained thereby, and they must be accepted. The judgment of the district court is

AFFIRMED.

NORVAL, J., expressed no opinion.