HARRINGTON, RESPONDENT, *v.* CRICHTON, APPELLANT.

(No. 3,987.)

(Submitted March 17, 1917. Decided March 23, 1917.)

[164 Pac. 537.]

*Elections—Ballots—Stub—Official Stamp—Mistake of Election Officials—Effect.*

Elections—Ballots—Official Stamp on Stub—Removal—Effect.
  1.  Where ballots had been delivered to electors by the judges of election with the official stamp apparently in the place in which the law (Rev. Codes, sec. 551) requires it to be, although in reality it was on the stub instead of on the ballot proper, the act of the judges in removing the stamp with the stub—thus leaving the ballot without the stamp—did not render the ballots void.

  [As to effect on election of irregular canvass of returns, see note in Ann. Cas. 1916A, 710.]

Same—Ballots—Erroneous Act of Election Officials—Effect.
  2.  The strict rule that an elector who negligently receives an unstamped ballot will not be heard to complain that his ballot remains uncounted because void does not obtain where a stub is provided for at the head of the ballot separated from it by a perforation requiring minute scrutiny to determine its presence, to be removed when the ballot is cast, where fraud is not present, and where the error by reason of which it is sought to disfranchise him was that of the election officials in placing the stamp upon the stub instead of on the ballot itself.

Same—Ballots—Electors must Exercise Ordinary Care.
  3.  An elector is chargeable with no more than ordinary care, in casting his ballot, to ascertain that the official stamp is placed thereon in the position in which the law apparently requires it to be, and to so fold it as to have the stamped inscription in view.

*Appeal from District Court, Lewis and Clark County; R. Lee Word, Judge.*

ELECTION CONTEST by Eva Harrington against May J. Crichton. Judgment for contestant, and contestee appeals. Reversed and remanded.

*Messrs. Wight & Pew* and *Mr. Ed. Phelan* submitted a brief in behalf of Appellant; *Mr. Chas. E. Pew* and *Mr. Phelan* argued the cause orally.

*Mr. C. A. Spaulding* and *Mr. J. R. Wine,* for Respondent, submitted a brief; *Mr. Spaulding* argued the cause orally.

HONORABLE JOHN A. MATTHEWS, Judge of the Fourteenth Judicial District Court, sitting in place of the Chief Justice, delivered the opinion of the court.

The parties to this action were, at the last general election, rival candidates for the office of county superintendent of schools for Lewis and Clark county, both being legally qualified and duly nominated. The board of canvassers found that appellant had received the highest number of votes cast for said office and declared her duly elected, and caused a certificate of election to be issued to her. Being dissatisfied with the result of the election, respondent filed her petition of contest. Issue was joined and a trial had, resulting in a judgment in favor of respondent declaring her duly elected to said office, and declaring the certificate so issued to appellant null and void. From this judgment the appellant appeals, assigning as error, among [1] others: "(3) The district court erred in refusing to count the ballots from the Gilman precinct, the Elkhorn precinct, and other ballots, the sufficiency of the stamping of which was questioned." This is the main contention and controlling question in the case, and is based on the findings of the court below, appearing in its memorandum opinion, that: (1) "During the recount of said ballots by the attorneys for the respective parties, and in the presence of the court, ballots were found in the returns of more than one precinct within the city, and from at least two precincts outside the city, that did not have on the

back thereof the official stamp. * * * " (2) "The exclusion of the unstamped ballots found in the several precincts, other than precinct No. 31, Gilman precinct, if, under the law, they should not be counted, would not change the result; if, however, the unstamped ballots in precinct 31 should not have been counted by the judges of election, and were to be disregarded on the official count, the result would be the election of the contestant." And the conclusions of law based on said findings, that the ballots not stamped should not have been counted, resulting in the judgment heretofore mentioned.

It appears from the evidence adduced at the trial that in Gilman precinct No. 31, through an erroneous interpretation of the instruction to judges of election, sent out according to law by the county clerk, that "on the back near the top of the ballot must be stamped the words 'official ballot,' the name and number of the election precinct," the judges systematically stamped each ballot before delivery, with the rubber stamp furnished, "on the back near the top" of the sheet on which was printed the blank ballot, but so near the top that the entire legend thereof appeared above the perforation. Each ballot, when voted, was returned by the voter so folded that the official stamp and the number of the ballot were on the outside, so that the judges of election could tell at a glance that the paper returned was the official ballot delivered to the voter. Thereupon the ballot judge tore off the stub and with it the official stamp so placed above the perforation, and placed the ballot in the box provided for that purpose. On the closing of the polls the box was opened; the ballots counted; results entered as required by law; and the ballots so counted, being the same ballots that went into the box during the day in the regular course of voting, were sealed in an envelope, indorsed and delivered to the county clerk, and, on the trial, produced in court.

The contention of respondent, sustained by the court below, is that inasmuch as no ballot in precinct No. 31 was, at the time it was taken from the box and counted, indorsed with the official stamp, every ballot cast in said precinct was void and should

not have been counted. The court below found. that there was no evidence of fraud of any kind in the election, and that there was no evidence that any ballot-box had been tampered with and, in fact, there is no contention of fraud or irregularity in the election, other than the irregularity in the stamping of ballots in the precincts named. The whole question, therefore, is whether under the law the appellant, who was admittedly the choice of a clear majority of the people of her county, shall lose the fruits of victory through the irregularity in stamping ballots referred to.

Section 9, Article IX, of the Constitution of the state of Montana, provides: ''The legislative assembly shall have the power to pass a registration and such other laws as may be necessary to secure the purity of elections and guard against abuses of the elective franchise.'' The legislature has provided a general registration law and present set of rather elaborate and effectual laws to secure the purity of our elective franchise and for the prevention of fraud in elections. Under these laws a uniform ballot is provided. It is printed and distributed at the public expense, and no other ballots than those so provided can be cast or counted. (Rev. Codes, sec. 542.)

Section 545, after providing for the blank form of ballot, reads as follows: ''The ballot shall be printed on the same leaf with a stub, and separated therefrom by a perforated line. The part above the perforated line, designated as the stub, shall extend the entire width of the ballot,'' *etc.*

The county clerk is required to furnish each precinct with the appropriate stamp, with ink pad for the purpose of designating or stamping the official ballots. (Sec. 547.)

Section 551 then provides: ''At any election the judges of election must designate two of their number whose duty it is to deliver ballots to the qualified electors. Before delivering any ballot to an elector, the said judges must print on the back, and near the top of the ballot, with the rubber or other stamp provided for the purpose, the designation 'official ballot' and the other words on same, as provided for in section 547 of this

chapter; and the clerks must enter on the poll lists the name of such elector and the number of the stub attached to the ballot given him. * * *

"Sec. 552. On receipt of his ballot the elector must forthwith, without leaving the polling place and within the guard rail provided, and alone, retire to one of the places, booths or compartments, if such are provided, and prepare his ballot. * * * After preparing his ballot, the elector must fold it so the face of the ballot will be concealed and so that the indorsements stamped thereon may be seen, and hand the same to the judges in charge of the ballot-box, who shall announce the name of the elector and the printed or stamped number on the stub of the official ballot so delivered to him, in a loud and distinct tone of voice. If such elector be entitled then and there to vote, and if such printed or stamped number is the same as that entered on the poll list as the number on the stub of the official ballot last delivered to him by the ballot judge, such judge shall receive such ballot, and after removing the stub therefrom in plain sight of the elector and without removing any other part of the ballot, or in any way exposing any part of the face thereof below the stub, shall deposit each ballot in the proper ballot-box for the reception of voted ballots, and the stubs in a box for detached stubs. * * * "

Section 572 provides: "As soon as the polls are closed the judges must immediately proceed to canvass the votes given at such election. The canvass must be public in the presence of bystanders, and must be continued without adjournment until completed and the result thereof is publicly declared.

"Sec. 573. * * * The judges must then take out of the box the ballots unopened except to ascertain whether each ballot is single, and count the same to determine whether the number of ballots correspond with the number of names on the poll lists. * * * "

Section 575 provides: "In the canvass of the votes any ballot which is not indorsed, as provided in this title, by the official stamp, is void and must not be counted, and any ballot or parts

of a ballot from which it is impossible to determine the elector's choice, is void and must not be counted; if part of a ballot is sufficiently plain to gather therefrom the elector's intention, it is the duty of the judges of election to count such part."

From the entire comparison of the sections quoted, it clearly [2] appears that the duties imposed by law upon the electors and the judges of election are largely reciprocal, and in many material matters the elector may, by his own negligence, render his ballot void in whole or in part. Thus he should be held chargeable with seeing that the official ballot delivered to him by the judges of election has stamped "on the back and near the top" the appropriate designation of the official ballot, and, if he negligently receives a ballot not so stamped or on which the stamp is glaringly deficient or lacking in some of the essential elements required by law, he cannot be heard to complain that his vote is not counted and that his ballot is void. (*Slaymaker* v. *Phillips,* 5 Wyo. 453, 47 L. R. A. 842, 40 Pac. 971, 42 Pac. 1049; *Newhouse* v. *Alexander,* 27 Okl. 46, Ann. Cas. 1912B, 674, 30 L. R. A. (n. s.) 602, 110 Pac. 1121; *Orr* v. *Bailey,* 59 Neb. 128, 80 N. W. 495; *Mauck* v. *Brown,* 59 Neb. 382, 81 N. W. 313; *Kelso* v. *Wright,* 110 Iowa, 560, 81 N. W. 805; *Kelly* v. *Adams,* 183 Ill. 193, 55 N. E. 837; *Miller* v. *Schallern,* 8 N. D. 395, 79 N. W. 865.) The cases above correctly state the general rule: "If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute must so hold, whether the particular act in question goes to the merits, or affects the result or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the legislature." (McCrary on Elections, 3d ed., sec. 190.) No one of the cases cited, however, was decided upon a statute similar to the one here under consideration, that is, under a statute providing for a "stub" at the head of the official ballot, separated from it only by a perforation, requiring minute scrutiny to determine its presence.

An examination of the statutes on the subject discloses the fact that section 575 was enacted prior to the provision for a stub at the head of the ballot. With the old form of ballot, with nothing to be removed, the unfortunate circumstances surrounding the voting at Gilman could not have arisen; either the ballot would have been properly stamped, or stamped not at all, to be in the first instance accepted, and in the second rejected, Under such circumstances, the reasoning of the courts as expressed in *Kelly* v. *Adams, supra,* is convincing: "To ignore this provision of the statute, and allow ballots to be counted which do not contain the official indorsement, would authorize the voting of ballots that might have been surreptitiously obtained or copied, and one of the purposes of the ballot law be entirely frittered away and the door opened for fraud." But does the reason for such a strict construction of the statute prevail under our present law?

The legislature, by providing for the stub to be numbered, and to be removed only at the time of depositing the ballot in the ballot-box, has hit upon an effective method of guarding against fraud and illegal voting, and has insured the deposit of the voted ballot in the ballot-box, and the provisions of section 575 should now be construed in the light of the changed conditions. The problem presented to the legislature was first to secure to the voter a free, untrammeled vote, and, second, to secure a correct record and return of that vote; and the legislative body is presumed to have had that problem in mind in preparing rules for the guidance of both the elector and the election officers. But the rules laid down are but a means to an end; to hold a slight infraction of those rules fatal, when the elector has substantially complied with the requirements and the mistake is but a technical error of the election officials, and in the face of the fact that the result was precisely what it would have been had no error been committed, and such holding would defeat the clear expression of the will of the majority, would be to subordinate substance to form and defeat the end sought to be secured. It would be to render that, which was intended to prevent fraud

and injustice, an instrument of injustice. The power to disfranchise an entire precinct—while it does exist—should be exercised with great care, and effect should be given to the expression of the will of the majority, when that expression is clear and free from any taint of fraud, and when possible to do so without violating the spirit of the statute.

In the case of *Talcott* v. *Philbrick,* 59 Conn. 472, 485, 10 L. R. A. 150, 20 Atl. 436, the court said: "All statutes tending to limit the exercise of the elective franchise by the citizen should be liberally construed in his favor.  *  *  .  *  A great constitutional privilege—the highest under our government—is not to be taken away on a mere technicality, but the most liberal intendment should be made in support of the elector's action whenever the application of common-sense rules which are applied in other cases will enable the courts to understand and render it effectual." The error or mistake by reason of which it is sought to disfranchise the entire electorate of Gilman precinct was that of the sworn officials of the state, charged with the protection and safeguarding of the rights of the people. In the case of *Moyer* v. *Van De Vanter,* 12 Wash. 377, 50 Am. St. Rep. 900, 29 L. R. A. 670, 41 Pac. 60, the court said: "There is good ground for recognizing a distinction between the obligation placed upon the individual voter and those matters which relate to the duties of election officers. Great care should be taken to distinguish between those requirements designed to prevent fraud, and which are necessary to preserve the purity of elections, and those which, while designed for the same purpose, are not essential thereto, or we may overreach the salutary effect sought to be obtained from provisions of the character of the first mentioned, by going so far, in construing as valid and mandatory provisions of the second class, as to open the very door to fraud that was sought to be closed thereby." With this declaration of the Washington court we heartily agree; and in this connection the reasoning of this court in the case of *Lane* v. *Bailey,* 29 Mont. 548, 75 Pac. 191, applies with peculiar force, though referring to a dissimilar state of facts. There, when

a registry agent had failed to require the elector to take the oath provided for, the court held that his vote should nevertheless be counted, saying: "If the elector may be deprived of his right to vote in this manner, an unprincipled registry agent may change the political status of a precinct at will, and, by concerted action on the part of a number of such, the political complexion of a county may be easily changed, and the popular will be effectually thwarted. If the elective franchise may be thus tampered with, incalculable abuses will creep into the state."

Each elector of Gilman precinct received from the proper judge of election a ballot on which that judge did "print on the back and near the top" the prescribed inscription. Each elector prepared his ballot according to law and did "so fold it that the face of the ballot will be concealed and so that the indorsements stamped thereon could be seen." He then delivered it to the proper officer who, in his presence, detached the stub and [3] deposited the ballot in the ballot-box. It would seem that the elector should be chargeable with no more than ordinary care, and that when he ascertained that the official stamp was on his ballot, in the position in which the law apparently required it to be, and so folded that ballot as to have the inscription in view, he had discharged that duty; and that the act of the election official thereafter in removing not only the stub but also the official stamp should not be permitted to render his ballot worthless. At the time of counting the ballots, the judges had the identified ballots before them and had at hand the means of identification, removed from the ballot through their mistaken construction of the law.

The ballots from Gilman precinct should have been counted; to hold otherwise would be to render the statute an instrument of the injustice it was intended to prevent. If, by stamping the official designation on the stub above an almost indiscernible perforation but in the apparent position required by law—thus lulling the elector into fancied security—the ballot may be thereafter rendered null and void by removing the stub, concerted action of two unscrupulous judges of election (that is,

the one designated to give out and the one designated to receive the ballots) could easily nullify the action of an adverse precinct and defeat the popular will in an election.

The judgment is reversed and the cause is remanded to the district court, with direction to enter judgment in favor of appellant (contestee) confirming her title to the office in question.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

Rehearing denied April 18, 1917.