C. EDWIN SWAN, APPELLANT, V. JESSE SHERMAN BOWKER, APPELLEE.

281 N. W. 891

FILED OCTOBER 28, 1938. No. 30351.

*Dryden, Dryden & Jensen,* for appellant.

*Edward P. McDermott* and *W. M. Cook, contra.*

Heard before ROSE, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ.

EBERLY, J.

This is an election contest under the provisions of article 10 of chapter 32 of the Compiled Statutes of Nebraska for 1929.

C. Edwin Swan contests the election of Jesse Sherman Bowker to the office of water commissioner of the city of Kearney, Nebraska, at its regular city election held on April 6, 1937. Originally tried in the county court, judgment was there for contestant. On appeal, the district court entered judgment in favor of contestee. The contestant now appeals to this court.

The statutory grounds upon which the contestant proceeds are: "Fifth. When illegal votes have been received or legal votes rejected at the polls sufficient to change the result. Sixth. For any error in any board of canvassers in counting the votes, or in declaring the result of the election

if the error would change the result." Comp. St. 1929, sec. 32-1002.

The proceeding for contesting an election provided for by this statute is, strictly speaking, neither an action at law nor a suit in equity. It is a summary proceeding of a political nature. *Barnes v. City of Lincoln,* 85 Neb. 494, 124 N. W. 99.

The provisions of the statute involved, by its terms providing for a special proceeding, are therefore controlling as to all rights claimed thereunder. It expressly provides, however, that "The county court shall hear and determine contests of * * * officers of cities and incorporated villages within the county." Comp. St. 1929, sec. 32-1009.

It also provides: "The proceedings shall be assimilated to those in an action, so far as practicable, but shall be under the control and direction of the court, which shall have all the powers necessary to the right hearing and determination of the matter," together with other express powers conferred and specifically enumerated in the statute. Comp. St. 1929, sec. 32-1025.

Contestant complains of certain action taken by the county court. His petition of contest and bond were filed therein on April 21, 1937. Summons was issued, in terms requiring the incumbent to answer the complaint on the 3d day of May, 1937, and this summons, together with a certified copy of the petition, was served upon the defendant on the same day, to wit, April 21, 1937. On May 4 following the contestant filed a written motion for judgment by default. No action was taken by the court on this motion. On May 11, 1937, contestee filed a motion to make contestant's petition more definite and certain. On May 13, 1937, contestant filed a motion to strike this motion of contestee from the files, for the reason that contestee was in default, and that said motion was filed out of time without securing permission of the court. The county court sustained this motion, but permitted contestee to answer forthwith. The answer of contestee was filed May 17, 1937. Contestant on May 17, 1937, filed a motion to strike the answer

of contestee, for the reason that he was in default of answer and the court had no jurisdiction to allow an answer to be filed. The last motion of the contestant was in effect denied. These dispositions made of pleadings are challenged as erroneous.

Two answers may be made to the contentions outlined.

The statutory provisions applicable are, viz.:

"The rules of practice concerning pleadings and processes in the district court shall be applicable, so far as may be, to pleadings and proceedings in the county court." Comp. St. 1929, sec. 27-512.

"The court, or the judge thereof in vacation, for good cause shown, may extend the time for filing an answer or reply upon such terms as may be just." Comp. St. 1929, sec. 20-822.

Maxwell, J., in discussing this question, employed the following language:

"In such case the fact that the time to answer or reply has expired has never been held (in this state at least) to preclude the court or judge from extending the time in which to file such answer or reply; and, where the application is made in good faith, the fact that the party is in default will not deprive him of the right." *Greenwood v. Cobbey*, 24 Neb. 648, 39 N. W. 833.

But a complete answer to contestant's contention on this question is that the contestee, as shown by this record, has at no time been in default. This is not an action at law nor a suit in equity, and the procedure is only assimilated to those in an action. So, while section 32-1022, Comp. St. 1929, provides that, upon the filing of a complaint, "summons shall issue against the person whose office is contested, in the same manner as in civil actions," etc., section 32-1023 also provides: "The cause shall stand for trial at the expiration of thirty days from the time of service of the summons and complaint, if the court shall then be in session; otherwise on the first day of the next term thereafter."

Assimilating the procedure in this class of cases, the

principles of procedure must be in harmony with the provisions of our Civil Code relating to proceedings under special statutes (Comp. St. 1929, sec. 20-2226), provided, however, the practice adopted must be consistent with the specific provisions of the special act under consideration.

On this basis it will be noted that section 27-505, Comp. St. 1929, provides for monthly terms of the county court for actions not cognizable before a justice of the peace, commencing on the first Monday in each calendar month and continuing to the third Monday of such month, inclusive, when all cases not then finally determined shall be continued by such court to the next regular term. While the issuance of summons in county court cases is provided for by section 27-506, it does not empower the county court by the summons issued to definitely fix the answer day for the defendant. Section 27-513, provides: "And the defendant shall also, on or before the *first day of the term at which the case stands for trial,* file in such court his answer containing any set-off or other defense he may have." (Italics supplied.)

The May, 1937, term of the county court of Buffalo county commenced on May 3, and terminated on May 17. The instant case, without reference to the state of the pleadings, did not stand for trial until May 21, or four days after the May term of this county court had closed. Obviously, there was no express statutory requirement that the contestee should file his answer during the May term of the county court, and therefore no basis for the contention that he was in default in failing so to do.

The contestant contends that in an election contest under sections 32-1020 to 32-1040, Comp. St. 1929, when the contestee has tried his case in the county court on a general denial, the only issue in the district court on appeal for the latter court's decision is such pleaded facts as are necessary for the contestant to prove under the allegations of his petition in order to enable him to recover a judgment, and that the district court erred in the instant case in admitting evidence that Cecil Gallagher, Arthur Neville, Tom O. Car-

rick, Arthur L. Stegeman, Anna F. Thurston and Gladys Croston were not qualified voters at the time of the contested election, and all having voted for contestant, six votes should be deducted from contestant's total.

Our controlling special statute contains no requirement that the contestee shall file an answer or otherwise plead. The general rule appears to be: "Contestee may answer even where the statute does not provide therefor, but is not required so to do." Further, a cross-complaint "need not be filed in order that contestee may set up his own title to the office." 8 Standard Ency. of Procedure, 75, 76. These principles are recognized in this jurisdiction. *McWhorter v. Schramm,* 97 Neb. 103, 149 N. W. 306.

On the other hand, our special statute includes certain specific requirements as to the pleading of the contestant.

Section 32-1021, Comp. St. 1929, provides: "When the reception of illegal or the rejection of legal votes is alleged as a cause of contest, the names of the persons who so voted or whose votes were rejected, if known, with the precinct, township, or ward where they voted or offered to vote, shall be set forth in the complaint."

In the construction of this language, we held: "When the complaint in a contested election case alleges the reception of illegal or the rejection of legal votes, the contestant, on motion, will be required to set out the names of the persons who so voted or whose votes were rejected, if known." *McWhorter v. Schramm, supra.*

But this act contains no similar provision as applicable to contestee. However, the rule of our Civil Code applicable is that such special proceedings are to be deemed civil actions, but so far as proceedings are prescribed by such special statute, they shall not be affected by the terms of the Civil Code, "until the legislature shall otherwise provide; but in all such cases, as far as it may be consistent with the statute giving such action, and practicable under this Code, the proceedings shall be conducted in conformity thereto." Comp. St. 1929, sec. 20-2226.

It is obvious that the provisions above quoted render ap-

plicable to this class of controversies the provisions of section 20-852, Comp. St. 1929, relating to amendments in furtherance of justice, and also section 20-853 providing that errors not affecting the substantial rights of the parties must be disregarded. This conclusion is fortified by the express provision of section 32-1025, Comp. St. 1929, hereinbefore quoted, viz.: "The proceedings shall be assimilated to those in an action, so far as practicable, but shall be under the control and direction of the court, which shall have all the powers necessary to the right hearing and determination of the matter. * * * It shall be governed by the rules of law and evidence applicable to the case." The effect of the language quoted is to fully vest the trial tribunals with ample and complete powers of amendments of pleadings, to the same extent as those vested in courts of record.

The transcript also discloses that, while originally the contestee filed a general denial in the county court, during the initial trial of this cause in that court, after the introduction of evidence had been commenced, and contestant had rested, the contestee made due application in writing, supported by positive affidavit, to amend his answer by adding thereto, in appropriate language, that "Arthur Neville, Cecil Gallagher, Arthur L. Stegeman, Richard Fleffe, Tom O. Carrick and others whose names contestee does not know and cannot now state" voted at the election held in the city of Kearney, Nebraska, on the 6th day of April, 1937, and that each and all of said voters were not qualified electors at said election, and each of said electors cast their vote for the contestant. The county court denied this application. To this ruling the contestee by force of statute was given an exception.

It may be said in passing that the allowance of an amendment in an appropriate case is not to be denied solely because the trial has progressed to a particular stage, and amendments may be allowed after the evidence is closed. *Thomas v. Haspel*, 126 Neb. 255, 253 N. W. 73.

So, too, in reference to defendants, the applicable rule is "not so strict in respect to amending pleas, or adding a new

and different plea as a defense to the action; the reason given being that the plaintiff, if he has misconceived the form or nature of his action, can discontinue and bring a new action; whereas the defendant must avail himself of his defense in the action brought against him. The defendant would, therefore, be allowed to amend his pleading at a stage of the case when the plaintiff would not be allowed to amend his declaration, and to amend by setting up a new defense. And the various statutes have not changed the law in this respect." 1 Standard Ency. of Procedure, 863.

It may be noted that the county court, after the denial of the application to amend, determined the cause against the contestee. The latter thereupon filed his motion for a new trial, in which the refusal to permit the amendment to the answer was expressly challenged. This motion was overruled by the county court.

Without determining the propriety, force and effect of defendant's motion for a new trial, and the ruling of the county court thereon, it may be said that defendant duly executed his appeal bond and lodged his appeal in the district court for Buffalo county. This imposed on that appellate court the duty to hear the case, upon such evidence as might be properly presented to it, as a trial *de novo*.

Under the circumstances of this case, and within the limitations contained in the transcript on appeal, the general rule appears to be, viz.: "Where a hearing on an appeal from a judgment of a justice of the peace or other inferior court is in fact a trial *de novo*, the allowance of amendments is governed by the same general principles as would govern if the cause had been instituted originally in such appellate court." 1 Standard Ency. of Procedure, 887.

As applied by the district court, the amendment permitted by it in this trial *de novo*, in substance and effect, did not exceed in actual scope the amendment sought by defendant in county court, the refusal of which by the county court was, in effect, held erroneous by the district court. This determination we approve.

"The practice seems to be approved in states having

statutes governing proceedings on appeal similar to our own to either treat the amendment offered in the court below as having been filed or to permit it to be filed anew in the court of last resort." *Raley v. Raymond Bros. Clarke Co.,* 73 Neb. 496, 103 N. W. 57.

From this it follows that there was no violation of the rule requiring substantial identity of issues on the trial of the appeal in the district court, and the evidence as to the competency of the voters challenged by the contestee was properly received.

As to the specific facts involved in the merits of the contest: The stipulation of the parties is that, eliminating questioned ballots and challenged voters, contestant Swan received 1,392 votes and contestee Jesse Sherman Bowker received 1,393 votes.

From a careful examination of the record, it appears that Cecil Gallagher, Arthur Neville, Tom O. Carrick, Anna F. Thurston and Gladys Croston, at the time of holding this election on April 6, 1937, under the statutory requirements, were illegal voters, and that each voted for the contestant, and because thereof five votes should be deducted from contestant's total vote as above stipulated.

It further appears that Francis Gallagher, who voted at this election and whose capacity was challenged, was a legal voter at the time of casting his ballot; that Arthur L. Stegeman, whose capacity as a legal elector was challenged, was a student for many years at an educational institution situated in Kearney, Nebraska, and during that time lived and was employed in that city under circumstances that clearly brought him within the principles of the rules announced by this court in *Berry v. Wilcox,* 44 Neb. 82, 62 N. W. 249, and particularly in the third paragraph of the syllabus thereof, viz.: "Persons otherwise qualified as voters who come to the seat of a university mainly for the purpose of obtaining an education, who are not dependent upon their parents for support, who have not the intention of returning to their parental home upon the completion of their studies, who are accustomed to leave the seat of the university dur-

ing vacation, going wherever they might find employment, and returning to the university when the term opens, regarding the seat of the university as their home and having no purpose formed as to their movements after completing their studies, are entitled to vote at the seat of the university."

The record discloses that, at the canvass of the votes in the district court, a total of 19 votes were challenged on the grounds that in the marking thereof by the voters the requirements of the governing statute had not been complied with, and that four ballots did not have indorsed thereon the names of two judges. We have no allegations of fraud in this case. As to the four ballots lacking proper indorsement of judges, it is contended that, as these ballots were otherwise regular, notwithstanding the rule to the contrary previously promulgated by this court, in view of the fact that in the instant case there is no issue of fraud, this mandatory rule should be rescinded and the statute be construed as directory only. A careful examination of the terms of our Australian ballot law compels the conclusion that they are not properly subject to the construction contended for, and that in harmony therewith is the rule stated by this court, as follows: "The requirements of the Australian ballot law, that the names or signatures of the two judges of an election shall be written on the back of each ballot to be used, and that a ballot not so indorsed shall be void, and not counted, are mandatory, and are not inimical to constitutional provisions." *Orr v. Bailey,* 59 Neb. 128, 80 N. W. 495. See, also, *Mauck v. Brown,* 59 Neb. 382, 81 N. W. 313; *Bingham v. Broadwell,* 73 Neb. 605, 103 N. W. 323; *Crosby v. Haverly,* 82 Neb. 565, 118 N. W. 123: *Rasp v. McHugh,* 121 Neb. 380, 237 N. W. 394; *State v. Marsh,* 123 Neb. 423, 243 N. W. 277.

The challenged ballots have been carefully examined and canvassed by this court. We agree with the action of the trial court in the rejection of exhibit 2, a "spoiled ballot," and exhibit 7; and also exhibits 3, 14, 15 and 18, as ballots not bearing the required indorsement of election officials.

We approve the rejection of exhibit 13, as the voter has evidently signed his own name on the back thereof. We also approve the action of the trial court in receiving and counting as legal votes for contestant Swan exhibits 6, 10, 12, 16 and 17. On due consideration, we find that exhibits 1, 4, 8 and 9 are each legal ballots, whereon the intent of the elector is clearly expressed, and the same should be received and counted in favor of contestant. In like manner, and for the same reason, exhibits 5, 11 and 19 should be counted for contestee Bowker.

As hereinbefore stated, the stipulation of the parties is that, exclusive of the 19 challenged ballots, at the election at Kearney, Nebraska, on April 6, 1937, contestant Swan received 1,392 votes and contestee Bowker received 1,393 votes. Of the 19 challenged votes, contestant Swan is entitled to receive 9 votes, and to have deducted the 5 illegal votes cast for him. The contestee is entitled to have 3 votes of the 19 credited to his total. Therefore, we find that at this election, 1,396 legal votes were cast for C. Edwin Swan, and 1,396 were cast for Jesse Sherman Bowker. The district court for Buffalo county therefore erred in the judgment entered by it in this cause.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings in harmony with this opinion.

REVERSED.